EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Wanda De León Ramos<br><br>Recurrida<br><br>v.<br><br>Juan Pablo Navarro Acevedo<br><br>Peticionario | Certiorari<br><br>2016 TSPR 60<br><br>195 DPR ____ |

Número del Caso: AC-2014-0056

Fecha: 23 de marzo de 2016

Tribunal de Apelaciones:

      Región Judicial de Bayamón

Abogada de la Parte Peticionaria:

      Lcda. Liana Colón Valentín

Abogada de la Parte Recurrida:

      Lcda. Carmen S. Curet Salim

Materia: Derecho de familia: alimentos. Criterios aplicables al retiro de aceptación de capacidad económica del alimentante dependiendo de si ello ocurre antes o después de transcurridos 3 años de haberse fijado la pensión alimentaria.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Wanda De León Ramos

    Recurrida

        v.                          AC-2014-0056

Juan Pablo Navarro Acevedo

    Peticionario

Opinión del Tribunal emitida por el Juez Asociado SEÑOR FELIBERTI CINTRÓN

En San Juan, Puerto Rico, a 23 de marzo de 2016.

Hoy resolvemos que, imprimirle un carácter de perpetuidad a la aceptación de capacidad económica en el proceso de adjudicar y revisar una pensión alimentaria para beneficio de un menor, es contrario a los postulados que rigen nuestro Derecho en materia de alimentos. Específicamente, delineamos el alcance del concepto de "justa causa" en función del momento en que se formule el retiro de una aceptación de capacidad económica.

## I. TRASFONDO PROCESAL

Las partes en este recurso son padres de un menor nacido el 22 de mayo de 2008 con la condición de Síndrome Down. La madre de éste, Sra. Wanda De

León Ramos (señora De León o recurrida), presentó una Demanda sobre pensión alimentaria en contra del padre, el Sr. Juan Pablo Navarro Acevedo (señor Navarro o peticionario), a poco más de una semana del nacimiento del niño. Durante el trámite correspondiente, el peticionario aceptó contar con la capacidad económica para satisfacer las necesidades alimentarias del menor.[1] Eventualmente, las partes pactaron una pensión alimentaria de $2,400 mensuales a ser sufragada enteramente por el señor Navarro. Mediante Sentencia dictada el **15 de diciembre de 2010**, el Tribunal de Primera Instancia aprobó una estipulación a esos efectos y consignó que, efectivo el 1 de enero de 2011, los pagos se efectuarían a través de la Administración para el Sustento de Menores (ASUME).

Transcurridos dos años, el 10 de diciembre de 2012, el peticionario presentó una *Moción en Solicitud de Revisión de Pensión Alimentaria* argumentando que debía reducirse la pensión estipulada, debido a cambios sustanciales ocurridos en las necesidades del menor. Toda vez que la recurrida no negó la merma en los gastos del niño, según aducidos, el foro primario los dio por aceptados y ordenó se celebrara una vista ante la Examinadora de Pensiones Alimentarias. Inconforme, la señora De León cuestionó dicha determinación. El Tribunal

---

[1]  No obstante, especificó que la madre también debía aportar a su manutención. A esos efectos, en el párrafo 8 de su *Contestación a Demanda y Reconvención*, el peticionario indicó: "El demandado acepta capacidad económica para satisfacer los gastos razonables de su hijo considerando que la madre del menor debe también aportar al sustento de éste". Recurso, **Ap. 157.**

de Apelaciones revocó la decisión impugnada y devolvió el caso al tribunal de instancia indicando que era menester celebrar una vista evidenciaria en la cual el peticionario probara sus alegaciones atinentes a la disminución en los gastos del menor.

Luego de varios trámites procesales, el foro primario señaló la vista en cuestión para el 29 de octubre de 2013. Durante el transcurso de la misma, el tribunal resolvió posponer el asunto hasta después del 15 de diciembre de 2013. Para esta fecha se habrían cumplido tres años de haberse fijado la pensión original.[2] La nueva vista quedó pautada para el 30 de enero de 2014.

Entre tanto, el 10 de diciembre de 2013, la recurrida solicitó al tribunal que expidiese órdenes dirigidas a ciertas instituciones bancarias para que éstas proveyeran información financiera del señor Navarro. El foro primario accedió a la petición de la señora De León el 12 de diciembre de 2013. Ese mismo día, el peticionario le cursó a la recurrida un Pliego de Interrogatorios y Requerimiento de Producción de Documentos, así como un Requerimiento de Admisiones.

La señora De León presentó entonces una *Moción sobre Revisión de Pensión Alimenticia* [sic] el 20 de diciembre de 2013. Indicó que los gastos del menor habían aumentado

---

[2] Este término corresponde al periodo para revisar las pensiones alimentarias según dispuesto en el Artículo 19(c) de la Ley Núm. 5 del 30 de diciembre de 1986, según enmendada, conocida como Ley Orgánica de la Administración para el Sustento de Menores, 8 LPRA sec. 518(c) (2014) (en adelante, Artículo 19(c)).

desde que se había establecido la pensión vigente hasta ese momento. Argumentó que, para propósitos de la vista únicamente, deberían tomarse en consideración los gastos del niño y responsabilizar al padre del 100% de los mismos por haber aceptado capacidad económica.

Cónsono con lo anterior, el 27 de diciembre de 2013, la recurrida objetó el descubrimiento de prueba interesado por el peticionario aduciendo que, como parte del trámite, procedía indagar exclusivamente sobre aquellos gastos asociados a las necesidades de su hijo. Por lo tanto, todo descubrimiento de prueba atinente a sus ingresos y a los gastos concernientes a sus hijas menores procreadas en un matrimonio previo, resultaban irrelevantes al proceso de determinar la cuantía de la pensión alimentaria en controversia.

El 3 de enero de 2014 el peticionario se opuso a la solicitud de revisión de pensión sometida por la recurrida y reclamó que no podía adjudicársele capacidad económica perpetuamente. Insistió en que era preciso calcular la pensión nuevamente, acorde a la reglamentación aplicable, y que la misma debía de ser sufragada proporcionalmente por ambos progenitores. El peticionario igualmente refutó las objeciones interpuestas por la recurrida para evitar responder al descubrimiento de prueba.[3] Primeramente, señaló que su aceptación de capacidad económica no tenía

---

[3]      Véase, *Moción en Oposición a Solicitud de Orden Protectora* presentada el 10 de enero de 2014.  Recurso, **Ap. 430.**

por qué continuar indefinidamente y que debía revisarse la pensión *de novo* por haber transcurrido tres años. De otra parte, argumentó que, para poder cuantificar la suma que le correspondía sufragar, era menester conocer la situación económica de la recurrida, así como los gastos del menor a través del descubrimiento de prueba propuesto.

En atención a lo anterior, el Tribunal de Primera Instancia emitió una Resolución y Orden fechada el **7 de enero de 2014** obligando a la recurrida a responder al descubrimiento de prueba cursado por el peticionario e indicando que "[l]a alegación de capacidad económica no es a perpetuidad y la parte [peticionaria] informó en corte abierta que no estaría alegando capacidad, razón por la cual se le ordena a ambas partes cumplir con el descubrimiento de prueba…." Igualmente, mediante Orden del **9 de enero de 2014**, declaró *No Ha Lugar* ambas mociones sometidas por la recurrida y reiteró que la pensión sería establecida acorde a las Guías. El tribunal rehusó reconsiderar estas determinaciones, como tampoco paralizó la vista según solicitado por la señora De León.

Entre tanto, el 17 de enero 2014 el peticionario sometió su Planilla de Información Personal y Económica (PIPE).

Eventualmente, el 30 de enero de 2014, se celebró una vista ante la Examinadora de Pensiones Alimentarias. Sin embargo, no se desfiló prueba durante el transcurso de la misma porque aún quedaba descubrimiento de prueba

pendiente. Conforme al Acta suscrita por la Examinadora de Pensiones Alimentarias, la recurrida no había cumplido con los requerimientos del peticionario, por lo que se le concedió un término de cinco días para presentar su PIPE. La vista quedó pautada para el 29 de abril de 2014.

La señora De León acudió entonces ante el Tribunal de Apelaciones cuestionando el que se le permitiese al señor Navarro retirar la aceptación de capacidad económica, así como llevar a cabo descubrimiento de prueba sobre su situación económica. Mediante Sentencia emitida el 16 de mayo de 2014, el foro apelativo intermedio revocó las determinaciones del tribunal recurrido fechadas el 7 y 9 de enero de 2014. Decretó que, para el señor Navarro poder retirar su aceptación de capacidad económica, correspondía celebrar una vista evidenciaria donde éste justificase su decisión. Consignó los siguientes criterios a ser considerados por el adjudicador al llevar a cabo esta tarea:

> Es preciso destacar que entre los factores que debe analizar el foro de instancia está la honestidad de la razón detrás del retiro de la aceptación de capacidad económica y cuáles son las circunstancias que dieron origen para que el señor Navarro Acevedo quiera retirarla, no siendo éstas el factor del paso de los tres años desde que se implantó.

Asimismo, ordenó que se paralizase el descubrimiento de prueba hasta tanto el tribunal resolviese si quedaba en efecto o no la aceptación de capacidad.

Inconforme, el señor Navarro solicitó nuestra intervención a través de un recurso de apelación el cual

acogimos como *certiorari*.[4] En su recurso, el peticionario cuestiona, en esencia, la determinación del Tribunal de Apelaciones que le condiciona el retiro de su aceptación de capacidad económica anterior a que se establezcan ciertos requisitos, tanto de naturaleza subjetiva como económica, independientemente de que hayan transcurrido tres años desde que la pensión alimentaria le fuera impuesta.

Luego de expedir el auto de *certiorari* solicitado, el peticionario presentó una *Moción en Auxilio de Jurisdicción* donde nos informó que, mediante Resolución del 20 de noviembre de 2014, el foro primario había renunciado a su jurisdicción en el caso debido a que las partes se habían trasladado a residir a los Estados Unidos. Sin embargo, esta determinación resultó a destiempo puesto que, una vez acogimos el recurso, se suspendieron todos los procedimientos ante los tribunales inferiores, según dispuesto en la Regla 20(K) del Reglamento de este Tribunal, 32 LPRA Ap. XXI-B. Véase Resolución de 23 de diciembre de 2014.

Corresponde a este Foro, por lo tanto, determinar en primera instancia si el cambio de residencia de las partes afectó nuestra autoridad para atender la controversia planteada.

---

[4] Véase nuestra Resolución del 31 de octubre de 2014.

## II. JURISDICCIÓN CONTINUA Y EXCLUSIVA

A base de los fundamentos que reseñamos a continuación, conservamos jurisdicción en este recurso a pesar de que, luego de expedido el auto de *certiorari* según antes indicado, la recurrida junto al menor se trasladaron a Florida, y el peticionario a Tejas.[5]

El Art. 2.205(a) de la Ley Interestatal Uniforme de Alimentos entre Parientes (LIUAP) (**Art. 2.205(a)**) establece la **jurisdicción continua y exclusiva** de los tribunales de Puerto Rico sobre las órdenes de pensión alimentaria que emitan, siempre que se cumplan ciertos requisitos.[6] Para efectos de este caso, nos concierne su primer inciso, el cual condiciona la autoridad del tribunal para modificar sus determinaciones "[m]ientras el **alimentante**, el **alimentista** o el **menor** en cuyo beneficio se ha emitido la orden de pensión alimentaria mantengan su residencia en Puerto Rico […]." (Énfasis nuestro).[7]

La LIUAP es esencialmente una traducción de la *Uniform Interstate Family Support Act* (UIFSA), un proyecto de ley modelo que tiene como propósito uniformar la

---

[5] A base de lo anterior, el Tribunal de Primera Instancia renunció a su jurisdicción. Sin embargo, esta determinación resultó a destiempo. Esto pues, anteriormente habíamos expedido el auto de *certiorari* en este recurso lo que, según arriba indicado, suspendió todos los procedimientos en el caso ante los tribunales inferiores, de conformidad con lo dispuesto en la Regla 20(K) del Reglamento de este Tribunal, 32 LPRA Ap. XXI-B. Véanse, *Moción en Auxilio de Jurisdicción* presentada por el peticionario el 18 de diciembre de 2014 y nuestra Resolución de 23 de diciembre de 2014 disponiendo de la misma.

[6] Ley Núm. 180-1997, 8 LPRA sec. 542d(a) (2014).

[7] En Aponte v. Barbosa Dieppa, 146 DPR 558 (1998) tuvimos la oportunidad de interpretar el segundo inciso del Art. 2.205(a), 8 LPRA sec. 542d(a), que permite a las partes, mediante estipulación, sustituir la jurisdicción de los tribunales de Puerto Rico por otro foro.

legislación que incide en los procedimientos de alimentos y agilizar el mecanismo de cobro entre aquellos estados que la adopten cuando hay diferentes jurisdicciones envueltas. Véase, Aponte v. Barbosa Dieppa, 146 DPR 558 (1998). La UIFSA es obra de la Conferencia Nacional de Comisionados sobre Leyes Uniformes Estatales (*National Conference of Commissioners on Uniform State Laws*), cuerpo que la aprobó en agosto de 1992. La American Bar Association la ratificó en el 1993. Íd.

El Art. 2.205 corresponde a la Sec. 205 de la UIFSA la cual fue objeto de varias enmiendas en el 2001. En particular, se eliminó el requisito de que alguna de las partes residiera en el estado para el tribunal retener jurisdicción continua y exclusiva sobre sus órdenes atinentes al sustento de menores. Esta disposición, según enmendada, lee como sigue:[8]

> (a)     A tribunal of this State ~~issuing~~ that has issued a child-support order consistent with the law of this State has and shall exercise continuing, exclusive jurisdiction ~~over a~~ to modify its child support order if the order is the controlling order and:
>
> (1) ~~as long as~~ at the time of the filing of a request for modification this State ~~remains~~ is the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued […]. UIFSA Sec. 205(a)(1) (2001), Handbook of the National Conference of Commissioners on Uniform State Laws, Buffalo, William S. Hein & Co., Inc., 2007, pág. 367.

---

[8]     Lo añadido aparece subrayado y lo eliminado tachado.

Como puede apreciarse, la versión actual de la Sec. 205(a)(1) dispone que el tribunal **mantendrá** jurisdicción para modificar su orden de alimentos **si, al momento de someterse la solicitud** para variarla, **alguna de las partes residía en el estado.** En otras palabras, lo determinante es la residencia de las partes a la fecha en que se acude al tribunal para solicitar algún remedio concerniente al dictamen de alimentos de un menor. Una vez presentada, el tribunal retiene jurisdicción continua y exclusiva y la conservará, a lo largo del procedimiento de revisión, independientemente de que luego todas las partes se muden fuera del estado.

Según se explica en el Comentario correspondiente a esta sección, el cual reproducimos a continuación, la enmienda **no** trajo un cambio sustantivo. Meramente persigue **aclarar la intención original** del Comité Redactor.

> In 2001 a significant, albeit subtle amendment was made to Subsection (a)(1). **The intent was not to make a substantive change, but rather to clarify the original intent of the Drafting Committee.** First, the time to measure whether the issuing tribunal has continuing, exclusive jurisdiction to modify its order, or whether all parties and child have left the State, is explicitly stated to be at the time of filing a proceeding to modify the child support order. […] (Énfasis nuestro). Comentario Sec. 205, <u>Handbook of the National Conference of Commissioners on Uniform State Laws</u>, <u>op. cit.</u>, pág. 369.

A base de lo anterior, consideramos que procede adoptar la interpretación aludida al proceso de analizar

el Art. 2.205(a)(1). Esta disposición es una traducción *verbatim* de la Sec. 205(a)(1) y no cabe duda de cuál fue la intención de los redactores originales de la ley modelo. La aclaración de sus términos proviene precisamente de la misma entidad responsable del proyecto y cuyo *expertise* en la materia resulta incuestionable.

Esta interpretación es igualmente cónsona con la política pública que reviste el estatuto. El principio de jurisdicción continua y exclusiva resulta medular para el buen funcionamiento del engranaje procesal establecido a través de LIUAP. De esta forma se asegura que exista una sola orden en vigor a la vez. Cónsono con lo anterior, es particularmente importante que se permita que el trámite relacionado a la modificación de la orden de alimentos que nos ocupa llegue a su conclusión final.

En este caso todas las partes residían en Puerto Rico al momento en que el peticionario solicitó revisión de la pensión alimentaria de su hijo. Por lo tanto, los tribunales de Puerto Rico retienen jurisdicción hasta tanto culmine el proceso judicial asociado a la determinación en cuestión.

### III. DERECHO DE ALIMENTOS

Procurar el bienestar de los menores constituye un pilar fundamental de nuestra sociedad y se ha reconocido como parte integral de la política pública del Gobierno de Puerto Rico. Santiago, Maisonet v. Maisonet Correa, 187 DPR 550 (2012); Franco Res[to] v. Rivera Aponte, 187 DPR

137 (2012); Llorens Becerra v. Mora Monteserín, 178 DPR 1003 (2010); Martínez v. Rodríguez, 160 DPR 145 (2006). Y es que, no podemos olvidar que el derecho de los menores a recibir alimentos va de la mano con el propio derecho a la vida consagrado en la Carta de Derechos de nuestra Constitución.[9] Santiago, Maisonet v. Maisonet Correa, supra; Llorens Becerra v. Mora Monteserín, supra; McConnell v. Palau, 161 DPR 734 (2004). El deber de alimentar a los hijos es inherente a la paternidad, por lo que se origina desde el mismo momento en que la relación filial queda legalmente establecida. Santiago, Maisonet v. Maisonet Correa, supra; Franco Res[to] v. Rivera Aponte, supra; McConnell v. Palau, supra.

La obligación alimentaria está expresamente consignada en el Código Civil.[10] No obstante, en aras de asegurar su cumplimiento y de este modo velar porque se implemente la política pública dirigida a que se atiendan las necesidades de los hijos menores por aquellos llamados a hacerlo, se promulgó la Ley Núm. 5 del 30 de diciembre de 1986, según enmendada, conocida como Ley Orgánica de la Administración para el Sustento de Menores, 8 LPRA sec. 501 et seq. (2014) (Ley Núm. 5 o Ley de ASUME). De esta manera, se trató de corregir la indolencia prevaleciente

---

[9]     Artículo II, Sec. 7, Const. PR, LPRA, Tomo 1 (2008).

[10]     El Artículo 153 del Código Civil enumera las facultades y deberes de los padres con respecto a sus hijos no emancipados, lo cual incluye el deber de alimentarlos. 31 LPRA sec. 601 (2015). De otra parte, el Artículo 143 pauta la obligación de los ascendientes y descendientes a darse alimentos recíprocamente. 31 LPRA sec. 562 (2015).

entre muchos padres ante las responsabilidades económicas para con sus hijos.[11] A tenor de los términos expresos del Artículo 19(a), 8 LPRA sec. 518(a) (2014), se prepararon unas Guías mandatorias, basadas en criterios numéricos y descriptivos, para utilizarse en el cómputo o modificación de las pensiones alimentarias de los menores.[12] Estas Guías tienen como propósito uniformar y facilitar el cálculo de las pensiones. Santiago, Maisonet v. Maisonet Correa, *supra*; Franco Res[to] v. Rivera Aponte, *supra*.

La Ley de ASUME tiene como fin asegurar el cumplimiento de las obligaciones alimentarias de los padres en función del provecho de los menores. Con ese propósito, se introdujeron unos mecanismos expeditos dirigidos a calcular el monto de estas obligaciones, recolectar las sumas correspondientes y hacerlas llegar a las personas a cargo de esos niños.

> Se declara que es política pública del Estado Libre Asociado de Puerto Rico procurar que los padres o

---

[11]    La problemática que se atiende a través de esta legislación se expone, de manera directa, en su Artículo 3 el cual, en la parte correspondiente, lee como sigue:

. . . . . . . .

> El incumplimiento de las obligaciones morales y legales por parte de uno o ambos padres para con sus hijos constituye uno de los problemas más apremiantes en nuestra sociedad.
> Por tal razón, es necesario poner en vigor una política pública de paternidad responsable. Además, es posible hacerlo porque, en la mayoría de los casos, el alimentante incumplidor tiene la capacidad económica para satisfacer su obligación.

. . . . . . .

8 LPRA sec. 502 (2014).

[12]    Véanse, Guías para Determinar y Modificar las Pensiones Alimentarias en Puerto Rico, Reglamento Núm. 7135 de la Administración para el Sustento de Menores, Departamento de la Familia, 24 de abril de 2006, enmendadas por el Reglamento Núm. 8529 del 30 de octubre de 2014 y el Reglamento Núm. 8564 del 6 de marzo de 2015.

las personas legalmente responsables contribuyan, en la medida en que sus recursos lo permitan, a la manutención y bienestar de sus hijos o dependientes mediante el fortalecimiento de los sistemas y la agilización de los procedimientos administrativos y judiciales para la determinación, recaudación y distribución de las pensiones alimentarias. ...

. . . . . . . .

Artículo 3 de la Ley Núm. 5, 8 LPRA sec. 502 (2014).

Por su parte, las Guías establecen unos parámetros objetivos específicos que deben utilizarse en el proceso de determinar el monto de las pensiones de una manera uniforme y equitativa tomando en consideración los ingresos de los padres y las necesidades de los hijos.

## A. Principio de Proporcionalidad

El principio de proporcionalidad incide tanto en el proceso de fijar la **cuantía** de los alimentos que amerita establecerse en el caso específico de un menor, así como al **prorratear** el pago de esos alimentos entre los progenitores. El Artículo 146 del Código Civil, 31 LPRA sec. 565 (2015) (en adelante Artículo 146), atiende la primera situación. Para ello, prescribe un esquema que exige se establezca un balance entre los intereses del menor y la capacidad económica de aquellos responsables de costear esas necesidades. A esos efectos el Artículo 146 dispone:

La **cuantía de los alimentos será proporcionada a los recursos del que los da y a las necesidades del que los recibe**, y se reducirán o aumentarán en proporción a los recursos del primero y a las necesidades del segundo. (Énfasis nuestro).

Por otro lado, cuando ambos padres son llamados a contribuir al mantenimiento del menor, sus respectivas

aportaciones deben establecerse en función de sus patrimonios individuales. El Artículo 145 del Código Civil, 31 LPRA sec. 564 (2015), atiende este escenario y postula, en su parte pertinente:

> Cuando recaiga sobre dos (2) o más personas la obligación de dar alimentos, **se repartirá entre ellos el pago de la pensión en cantidad proporcionada a su caudal respectivo**.
>
> . . . . . . . .

(Énfasis nuestro).

En este sentido, el principio de proporcionalidad pretende alcanzar un equilibrio entre aquello que precisa el menor para su bienestar y el capital de sus padres. Santiago, Maisonet v. Maisonet Correa, *supra*; Franco Res[to] v. Rivera Aponte, *supra*; Llorens Becerra v. Mora Monteserín, *supra*; Martínez v. Rodríguez, *supra*. Dicho principio se integra, tanto en la Ley Núm. 5, como en las Guías. Llorens Becerra v. Mora Monteserín, *supra*; Martínez v. Rodríguez, *supra*. "Esta [Ley de ASUME] es la legislación especial que hace viable la política pública del Estado procurando que las personas legalmente responsables contribuyan, **en la medida que sus recursos lo permitan**, a la manutención y el bienestar de sus hijos o dependientes". (Énfasis nuestro). Santiago, Maisonet v. Maisonet Correa, *supra*, pág. 562. Véase, también, el Artículo 3 de la Ley Núm. 5, *supra*.

De la misma manera, la Ley Núm. 5 provee para la promulgación de Guías destinadas a lograr que las pensiones alimentarias se determinen y modifiquen "de manera uniforme en conformidad con las facilidades

económicas de cada progenitor y las necesidades y aptitudes educacionales del alimentista". Santiago, Maisonet v. Maisonet Correa, *supra*, págs. 562-563. Véase, además, el Artículo 19 de la Ley de ASUME, 8 LPRA sec. 518 (2014). "Es decir, de acuerdo con lo que disponen estas guías, al determinar la cuantía de la pensión no sólo se evalúa la situación económica del alimentante, sino que, además, se analizan las necesidades particulares del alimentista." Martínez v. Rodríguez, *supra*, pág. 154.

De otra parte, siendo los alimentos una obligación inherente a la paternidad, todo progenitor es responsable de suplir las necesidades de sus hijos. Nuestro Derecho provee para que los padres compartan entre ellos la carga económica que representa el sustento de su prole, en cuyo caso cada cual aportará en la medida en que su condición se lo permita. Franco Res[to] v. Rivera Aponte, *supra*. "[E]s claro que la obligación alimentaria recae en ambos progenitores, quedando así obligados a contribuir de acuerdo con su fortuna a la manutención de sus hijos. En otras palabras, la obligación es indivisible y aplica tanto al padre como a la madre". (Cita, comillas y corchetes omitidos). Santiago, Maisonet v. Maisonet Correa, *supra*, págs. 561-562. "Como parte del proceso evaluativo, **es necesario determinar tanto la capacidad económica del padre o la madre no custodio, como la del padre o de la madre custodio, toda vez que ambos están obligados a prestar alimentos de forma proporcional a sus**

**recursos.**" (Énfasis nuestro). <u>Llorens Becerra v. Mora</u>

<u>Monteserín</u>, *supra*, pág. 1018.

### B. Aceptación de Capacidad

> [C]uando un padre alimentante acepta que posee suficientes ingresos para pagar la pensión alimentaria que en derecho proceda a favor de sus hijos, *promueve, con acierto, el interés público del bienestar de los menores y agiliza los procedimientos en cuanto a la otorgación de pensiones alimentarias*. (Énfasis en el original). <u>Chévere v. Levis</u>, 150 DPR 525, 544 (2000).

A través de la jurisprudencia hemos reconocido que, cuando un padre o madre alimentante admite que cuenta con medios suficientes para satisfacer sus obligaciones alimentarias para con sus hijos menores se prescinde, por innecesario, el trámite provisto en la Ley de ASUME y las Guías. <u>Santiago, Maisonet v. Maisonet Correa</u>, *supra*. En este caso trazamos el desarrollo de la norma jurisprudencial inicialmente pautada en <u>Chévere v. Levis</u>, *supra*, la cual rige el procedimiento aplicable para el cómputo de las pensiones alimentarias cuando el alimentante admite capacidad económica en el trámite de fijarlas.

Esta aceptación acarrea consecuencias importantes para el alimentante. Primeramente, queda impedido de posteriormente impugnar la pensión que se establezca, aduciendo que no cuenta con los recursos necesarios para ello.[13] <u>Santiago, Maisonet v. Maisonet Correa</u>, *supra*;

---

[13] No obstante, aún bajo estas circunstancias, puede cuestionar el monto de la pensión que se pretenda imponer a favor del alimentista. Así lo advertimos en <u>Santiago, Maisonet v. Maisonet Correa</u>, 187 DPR 550, 565 (2012) al expresar lo siguiente:

> Téngase presente que esa prohibición no se refiere a que no se pueda impugnar la cuantía de la pensión porque resulte

Ferrer v. González, 162 DPR 172 (2004); Chévere v. Levis, *supra*.

De otra parte, la información sobre el patrimonio de la persona que acepta capacidad queda protegida. En los casos rutinarios, el descubrimiento de prueba juega un papel fundamental en el proceso de establecer las pensiones alimentarias de los menores, puesto que para poderlas fijar, es indispensable conocer la realidad económica del alimentante, así como la situación del alimentista. Santiago, Maisonet v. Maisonet Correa, *supra*; Ferrer v. González, *supra*; Chévere v. Levis, *supra*. De hecho, la Ley Núm. 5 establece como mandatorio el descubrimiento de información de ambos, el alimentista y el alimentante.[14]

Sin embargo, cuando el padre o madre alimentante admite que cuenta con los medios necesarios para satisfacer el pago de la cantidad que eventualmente se le ordene pagar como alimentos para sus hijos menores, se torna innecesario el mecanismo de descubrimiento de prueba dirigido a precisar su situación económica. Santiago, Maisonet v. Maisonet Correa, *supra*; Ferrer v. González, *supra*; Chévere v. Levis, *supra*. Esta limitación se

---

contraria a la prueba o porque sea irrazonable a la luz de las necesidades de los menores.

[14]    A esos efectos, el Artículo 16 de la Ley Núm. 5, 8 LPRA sec. 515 (2014), dispone:

En los procedimientos judiciales relacionados con pensiones alimenticias [sic], el descubrimiento sobre la situación económica del alimentante y alimentista será compulsorio.

. . . . . . . .

extiende a todo descubrimiento de prueba del alimentante, incluyendo su estilo de vida, por entenderse innecesaria. Ferrer v. González, *supra*. "*El estilo de vida de un alimentante puede ser determinado o inferido de su capacidad económica, sin necesidad de aportar prueba sobre si el alimentante vive o no de manera compatible con ella*". (Énfasis en el original). Ferrer v. González, *supra*, pág. 181.

Por último, el alimentante viene obligado a cubrir el 100% de la pensión adjudicada, lo que hace imposible activar el mecanismo delineado en las Guías para adjudicar porcientos de responsabilidad entre los progenitores. En estos casos no se cuenta con información concerniente a los ingresos y el patrimonio de la persona no custodia, datos que resultan indispensables para poder asignarle a cada uno de los padres su correspondiente proporción de responsabilidad alimentaria. En otras palabras, se desconoce una variable esencial a la fórmula establecida para calcular las pensiones. Ello impide, por lo tanto, realizar el cómputo matemático necesario para poder determinar la cantidad proporcional que viene obligado a contribuir individualmente cada progenitor. Santiago, Maisonet v. Maisonet Correa, *supra*.

Así pues, en una situación en que uno de los progenitores acepta tener capacidad para suplir las necesidades económicas de sus hijos, únicamente resta fijar el monto de la pensión en atención **exclusivamente** a

las necesidades del menor. Ferrer v. González, *supra*. Consecuentemente, se trabaja con un esquema diferente al pautado en las Guías. En estos casos, le corresponde a la persona custodia presentar evidencia de los gastos razonables de los menores, así como del estilo de vida del alimentante, para entonces determinar el total de la pensión que el alimentante debe pagar. Santiago, Maisonet v. Maisonet Correa, *supra*.

Según mencionáramos anteriormente, la Ley de ASUME tiene como propósito fundamental establecer unos mecanismos para exigir una paternidad o maternidad responsable.[15] El trámite establecido por este estatuto, complementado a su vez por las Guías, va dirigido a aquellos padres que no responden a sus obligaciones alimentarias para con sus hijos. Igualmente, está encaminado a lograr que se adjudiquen pensiones en casos en los que existe una disputa sobre la cantidad que el padre o la madre no custodio debe aportar para la manutención del menor, o no existe consenso entre los padres sobre el monto específico de la pensión que corresponde acorde las circunstancias. Su naturaleza, por lo tanto, resulta inherentemente forzosa.

Por el contrario, la aceptación de capacidad económica es una decisión **voluntaria**, que toma un padre o una madre, mediante la cual se compromete a cubrir **todas**

---

[15] Según provisto taxativamente en el Artículo 3 de la Ley Núm. 5, *supra*, el esquema implantado por este estatuto va dirigido a compeler a todos aquellos que no asumen a capacidad su rol de padres a que cumplan con sus obligaciones alimentarias frente a sus hijos.

las necesidades que en su día se establezcan como parte de una pensión alimentaria. En este sentido, el engranaje provisto en la Ley de ASUME y en las Guías resulta fundamentalmente contrario a la aceptación de capacidad.

> Surge entonces con meridiana claridad que el propósito de dicha legislación [Ley Núm. 5] es descubrir la suficiencia económica del llamado a alimentar para, conforme a ello, establecer una pensión alimentaria. Es decir, la legislación se activa *afirmativamente* cuando el obligado a alimentar se negare a aceptar o esté en duda su capacidad económica. Ahora bien, cuando este último fomenta la política del Estado de "*paternidad voluntaria*" y admite capacidad económica, no es necesario que divulgue sus ingresos. ... Por consiguiente, cuando el padre alimentante acepta su capacidad económica, se hace innecesario el descubrimiento de prueba, según dispuesto por ley. (Énfasis en el original). Chévere v. Levis, *supra*, pág. 544.

Es principio reiterado en materia de alimentos que las sentencias que los fijan no constituyen cosa juzgada, por lo que siempre estarán sujetas a revisión de ocurrir algún cambio en las circunstancias del alimentante o del alimentista que así lo amerite. Cortés Pagán v. González Colón, 184 DPR 807 (2012); McConnell v. Palau, *supra*.

De otra parte, la Ley de ASUME establece, como regla general, que las órdenes de pensión alimentaria pueden ser revisadas y modificadas a los tres años de establecidas. No obstante, a petición de parte o por iniciativa del Administrador de ASUME o del propio tribunal, el estatuto permite, por vía de excepción, solicitarlo previo a transcurrir este término de existir justa causa para hacerlo. Se entiende por "justa causa" situaciones tales como "variaciones o cambios significativos o imprevistos en los ingresos, capacidad de generar ingresos, egresos,

gastos o capital del alimentante o alimentista, o en los gastos, necesidades o circunstancias del menor, o cuando exista cualquier otra evidencia de cambio sustancial en circunstancias". Artículo 19(c), 8 LPRA sec. 518(c) (2014) (en adelante, Artículo 19(c)).

En este contexto, se ha interpretado el concepto "justa causa" como aquel cambio importante que ocurre ya sea, en la capacidad del alimentante para costear los alimentos del menor, o en las necesidades del alimentista. McConnell v. Palau, *supra*. Así pues, aun en aquellos casos en que las partes hayan estipulado el monto de la pensión, se les permite solicitar su variación **antes** de concluir el plazo de tres años, siempre y cuando ocurra "un *cambio sustancial* en las circunstancias que dieron lugar o que lo originaron". (Énfasis en el original). Íd., pág. 748. En los casos en que se intenta alterar una orden fijando alimentos dentro de los tres años de decretados, el peso de la prueba lo tendrá quien interese tal modificación. Es decir, el alimentante o alimentista que proponga la variación deberá presentar la prueba necesaria que acredite los fundamentos de su solicitud cónsono con los requisitos aplicables en Derecho. Íd.

## IV. DISCUSIÓN

En este caso, por determinación del juez de instancia, se señaló una vista para atender la solicitud de revisión de pensión alimentaria sometida por el señor Navarro. Para la fecha de la vista, habían transcurrido

tres años de haberse fijado la misma a base de la aceptación de capacidad económica del peticionario. Por lo tanto, en ese momento, era menester disponer de los dos asuntos traídos a la consideración del tribunal por el señor Navarro. Primeramente, su petición de rebaja de pensión por alegada disminución en los gastos asociados a la manutención del menor. De otra parte, la solicitud para que la madre custodia aportara, en la medida de sus recursos y conforme al principio de proporcionalidad, a la pensión alimentaria a establecerse. Con ese fin, el señor Navarro no solamente suplió voluntariamente toda la información económica requerida por la PIPE, sino que, accedió además al descubrimiento de prueba interesado por la señora De León para que ciertas instituciones bancarias proveyeran información sobre sus cuentas directamente a la recurrida.

Por otro lado, la señora De León se sostuvo en la irrevocabilidad de la aceptación original de capacidad económica del padre no custodio. Se resistió, por lo tanto, a proveer la información solicitada en la PIPE y objetó todo descubrimiento de prueba dirigido a indagar sobre su situación económica. Asimismo, solicitó el aumento de la pensión argumentando que, contrario a la posición asumida por el padre no custodio, los gastos asociados a las necesidades del menor habían aumentado.

El foro primario entendió que, por haber transcurrido tres años, el señor Navarro quedaba libre de retirar su

aceptación de capacidad económica y, dadas las controversias planteadas, la recurrida venía obligada a revelar los datos relacionados a sus finanzas. No obstante, el Tribunal de Apelaciones discrepó de esta determinación y paralizó las gestiones de descubrimiento de prueba iniciadas por el peticionario. Ordenó que se detuviese dicho descubrimiento hasta tanto se resolviese si quedaba en efecto la aceptación de capacidad económica original del señor Navarro.

Cabe destacar que, según mencionamos anteriormente, el andamiaje diseñado por la Ley de ASUME y las Guías va dirigido a identificar los recursos de cada uno de los padres, conjuntamente con las necesidades de sus hijos menores de edad, para poder precisar la suma que le corresponde pagar a cada uno de ellos a modo de alimentos. En estos casos, rige como criterio cardinal a la fórmula el principio de proporcionalidad en sus dos dimensiones. Es decir, conjugar la relación entre los caudales de los padres contrapuestos a los recursos necesarios para viabilizar el bienestar de sus hijos. El sistema está diseñado para que la carga económica la asuman **ambos** padres, ya que la responsabilidad de los hijos ordinariamente recae sobre los dos progenitores.

Por vía de **excepción**, se han dado casos en los que el padre o la madre no custodio ha consentido a asumir el 100% del sustento de un hijo. Esta decisión es enteramente **voluntaria** y tomada por razones ajenas al

proceso relacionado a la fijación de alimentos. Únicamente compete al adjudicador el resultado práctico de esta determinación personal, que hemos reconocido redunda positivamente en el bienestar de los menores concernidos. Cuando esto ocurre, se aligeran los procesos y salen beneficiadas todas las partes afectadas, así como el sistema judicial. Pero, **al ser una decisión voluntaria, se retiene la capacidad de retirarla.**[16]

En lo concerniente al momento en que opera el retiro de una aceptación de capacidad económica anterior, debe quedar claro que el concepto "justa causa", incorporado en el Artículo 19(c), **únicamente** se establece como requisito para solicitudes de revisión y modificación de órdenes de pensión sometidas **antes** de que transcurran tres años desde su expedición. Por lo tanto, luego de expirado el término antes mencionado, **como lo es el caso que nos ocupa,** no puede imponérsele al alimentante el deber de justificar su solicitud como condición para revisar una pensión. Ello es así indistintamente de si la petición viene acompañada de un aviso de retiro de una aceptación de capacidad económica anterior.

Una vez el alimentante se retracta de su aceptación de capacidad económica, se allana a los rigores del trámite reglamentario aplicable al proceso de establecer la pensión alimentaria. El caso ya no opera al margen de

---

[16] Aunque, de hacerlo antes de pasados tres años desde que la pensión fue impuesta, esta facultad queda limitada por las directrices establecidas en el Artículo 19(c).

las Guías, sino que se utilizan las fórmulas trazadas por nuestro ordenamiento diseñadas específicamente con el propósito de armonizar el monto del capital de los padres con el deber de mantener a sus hijos menores acorde las necesidades de éstos. **Ello conlleva, necesariamente, que la carga económica revierta nuevamente a ambos progenitores proporcionalmente.**

A base de los hechos presentados en este recurso, no encontramos base legal alguna para prohibirle a un padre o madre no custodio retirar su aceptación de capacidad en el proceso de fijación de alimentos una vez pasados los tres años establecidos por nuestra normativa. Es importante destacar que, en estos casos, la persona **no** se niega a aportar a los gastos de sus hijos. Simplemente, interesa pagar lo que en estricto derecho le corresponde. En otras palabras, el efecto concreto de esta decisión no implica dejar de proveer para su manutención, sino propiciar un ajuste en su aportación acorde al principio de proporcionalidad. Entre tanto, las necesidades del hijo no quedan desprovistas.[17]

Reconocemos que el tribunal viene obligado a velar por el bienestar de los menores. Esto, sin embargo, no puede ser óbice para negarle el derecho a un alimentante

---

[17] El menor continuará recibiendo sus alimentos según ordenado hasta tanto se determine otra cosa. En caso de que proceda una reducción, el cambio será prospectivo excepto que medien "circunstancias extraordinarias" y el tribunal o el Administrador de ASUME así lo determine. Artículo 19(b) de la Ley de ASUME, 8 LPRA sec. 518(b) (2014). De ser meritorio un aumento, operará con carácter retroactivo. Íd. De todos modos, el monto de la pensión siempre se ajustará acorde a la prueba que el padre o madre custodio presente para validar las necesidades del menor.

de acogerse a lo provisto en nuestro ordenamiento y en las Guías, por el hecho de que en un momento dado aceptó contar con la capacidad económica necesaria para costear una pensión alimentaria. El retiro de una aceptación de capacidad económica anterior, de por sí, no impacta forzosamente la cuantía de los alimentos que ha de recibir un menor. Cuando un padre o una madre no custodio meramente rescinde dicha aceptación, lo que procede es compartir el total de la pensión hasta entonces asumida por el padre o madre no custodio proporcionalmente con el padre o madre custodio. Únicamente en la eventualidad de que entre ambos padres no pueda sufragarse la pensión anteriormente calculada, se reducirá esta cantidad en la medida en que las Guías así lo dictaminen.

Distinto es, como sucede en este caso, cuando conjuntamente con el retiro de una aceptación de capacidad económica anterior se solicita una rebaja en la pensión alimentaria asignada, aduciendo que los gastos de manutención han disminuido o ha transcurrido en exceso de tres años desde que la misma se fijó. Entonces, la cuantía de los alimentos a pagar pasa a ser el eje central de la controversia, acompañado de una evaluación accesoria de los recursos de ambos padres para, de este modo, asignarle a cada progenitor la cuota que le corresponde sufragar acorde con sus finanzas particulares.

A base de lo anteriormente expuesto, concluimos que no podía el Tribunal de Apelaciones imponerle al

peticionario como condición al retiro de su aceptación de capacidad económica anterior el que justificara su determinación, luego de transcurrido el periodo de tres años, según provisto en la Ley de ASUME. Por lo tanto, resulta igualmente improcedente el ordenar al juez de instancia examinar la "honestidad" de las razones interpuestas como explicación, según intimado por el foro apelativo intermedio.

## V. CONCLUSIÓN

Por consiguiente, se revoca la Sentencia recurrida y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de conformidad a lo anteriormente indicado.

Se dictará Sentencia de conformidad.


ROBERTO FELIBERTI CINTRÓN
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Wanda De León Ramos

    Recurrida

       v.                  AC-2014-0056

Juan Pablo Navarro Acevedo

    Peticionario

SENTENCIA

En San Juan, Puerto Rico, a 23 de marzo de 2016.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se revoca la Sentencia recurrida y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de conformidad a lo dispuesto en dicha Opinión.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez disiente sin opinión escrita.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo