Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| NICOLE ALEXA NORIEGA OJEDA<br><br>Peticionaria<br><br>V.<br><br>XAVIER J. SURIS CANCEL<br><br>Recurrido | KLCE202300974 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Mayagüez<br><br>Caso Núm.: MZ2022RF00453 (302)<br><br>Sobre: ALIMENTOS – MENORES DE EDAD Y OTROS |

Panel integrado por su presidenta, la Jueza Domínguez Irizarry, la Jueza Grana Martínez y el Juez Pérez Ocasio.

Grana Martínez, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 29 de septiembre de 2023.

La señora Nicole Alexa Noriega Ojeda (en "adelante, la peticionaria"), nos solicita que expidamos el auto de *certiorari* presentado y revoquemos una determinación en la que la Sala de Mayagüez del Tribunal de Primera Instancia, decidió culminar todo descubrimiento de prueba con relación a las circunstancias económicas de Xavier J. Suris Cancel (en adelante, "el recurrido"), toda vez que, éste aceptó tener capacidad económica para satisfacer las necesidades alimentarias del hijo que tiene en común con la peticionaria. La determinación recurrida fue dictada el 1 de agosto de 2023 y debidamente notificada a las partes el 4 de agosto del mismo año. Veamos los hechos pertinentes de la controversia ante nos.

## I.

El 1 de agosto de 2022, la peticionaria presentó la demanda de epígrafe. En lo atinente expresó, que mantuvo con el recurrido una relación afectiva análoga a la conyugal. De la referida relación, el 13 de noviembre de 2020, nació el menor K.A.S.N. Al culminar su convivencia con el recurrido, la peticionaria entendió procedente la

intervención judicial para establecer la custodia, patria potestad y alimentos de K.A.S.N. Así pues, mediante sus alegaciones, solicitó tanto la custodia exclusiva como la privación de la patria potestad del recurrido en relación con el menor. Ambas solicitudes, según adujo, por alegados actos de violencia doméstica cometidos por el recurrido. De igual modo, peticionó al foro primario que fijara una cuantía de alimentos, en favor de K.A.S.N., a ser satisfecha por el recurrido. Asimismo, suplicó al foro de instancia que refiriera el caso a la Unidad de Relaciones de Familia para un informe social y forense y a la Examinadora de Pensiones Alimentarias (en adelante "EPA"). Cabe señalar, que esta es la primera vez que se solicita una fijación de pensión alimentaria para el menor K.A.S.N. Antes de esta fecha, solo se había fijado una pensión provisional, durante un caso de Orden de Protección, consistente en la cantidad de ciento veinticinco dólares ($125.00).

El 30 de agosto de 2022, el recurrido presentó escrito intitulado *Contestación a Demanda, Defensas Afirmativas, Reconvención y Solicitud de Custodia Compartida*. En su escrito, aceptó la petición de alimentos en favor del menor, por el derecho que le asiste a éste como alimentista. Además, solicitó al foro de origen, que estableciera una custodia compartida o en la alternativa la fijación de relaciones paternofiliales. A la luz de ello, peticionó que se realizara una investigación social pericial-forense, mediante la Unidad de Relaciones de Familia para dirimir el tema de la custodia del menor.

Luego de varias incidencias procesales, que no son necesarias de pormenorizar, el 14 de diciembre de 2022, las partes llevaron a cabo una "Estipulación de Pensión Alimentaria" ante la EPA. El referido acuerdo se otorgó, a los fines de establecer una pensión alimentaria provisional en favor del menor K.A.S.N. El pago mensual estipulado consistió en la cantidad de doscientos dólares ($200.00). Su fecha de efectividad se pactó para el 1 de diciembre de 2022.

Durante el trámite procesal del caso ante nos, existieron algunas controversias en torno al descubrimiento de prueba. Luego de algunas prórrogas concedidas por el foro recurrido y conversaciones entre las partes de epígrafe, el 17 de enero de 2023, la peticionaria entregó su Planilla de Información Personal y Económica. El 23 de enero de 2023, el recurrido presentó la respectiva planilla. Sin embargo, la peticionaria prosiguió con su descubrimiento de prueba y a esos efectos solicitó estados de cuentas bancarias del recurrido. Así las cosas, el 19 de mayo de 2023, el recurrido presentó *Moción en Declaración de Capacidad Económica.* Mediante dicha moción, admitió tener capacidad económica para sufragar los gastos necesarios del menor K.A.S.N. A tenor con ello, alegó que resulta innecesaria la solicitud de descubrimiento de prueba de la peticionaria, toda vez que, su aceptación de capacidad económica le eximía de presentar evidencia en cuanto a sus ingresos. Por tanto, según adujo, solo restaba por dilucidar las necesidades económicas del menor y los gastos declarados en la Planilla de Información Personal y Económica de la peticionaria.

En esa misma fecha, el Tribunal de Primera Instancia se expresó por medio de una *Orden,* mediante la cual, se dio por enterado de la aceptación de capacidad económica del recurrido y, en consecuencia, detuvo todo descubrimiento de prueba relacionado al asunto en cuestión. En oposición, el 28 de mayo de 2023, la peticionaria presentó un documento intitulado *Escrito Solicitando Vista y Protección a Derechos Constitucionales.* A través de este, adujo que la orden emitida por el foro de origen le había violado su derecho a un debido proceso de ley. Ello, al no brindarle la oportunidad de expresarse y oponerse al escrito del recurrido, antes de que se diera por culminado el descubrimiento de prueba. El 1 de junio de 2023, el Tribunal de Primera Instancia emitió una *Orden,* la cual fue notificada el 2 de junio de 2023, mediante la cual expresó el haber adjudicado la

controversia en cuestión y, en consecuencia, mantuvo su determinación inicial.

Inconforme, el 20 de junio de 2023, la peticionaria presentó escrito en reconsideración. Así pues, el 1 de agosto de 2023, el tribunal primario dictó una *Resolución*, la cual fue notificada el 4 de agosto de 2023. Mediante la misma, el tribunal de instancia determinó que no procedía la divulgación de ingresos del recurrido, por este haber aceptado capacidad económica; se limitó a expresar, que solo resta que el recurrido cubra el cien por ciento (100%) de los gastos necesarios del menor, bajo una suma justa y razonable de pensión alimentaria. En consecuencia, se circunscribió a declarar improcedente todo descubrimiento de prueba.

Aun inconforme, el 5 de septiembre de 2023, la peticionaria instó el recurso de epígrafe, y a través de este colocó el siguiente señalamiento de error:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR NO HA LUGAR LA SOLICITUD DE DESCUBRIMIENTO DE PRUEBA DE LA PETICIONARIA PARA LOS PERIODOS COMPRENDIDOS DESDE EL 1 DE AGOSTO DE 202[2]. HASTA EL 19 DE MAYO DE 2023, FECHA EN QUE SE HIZO ACEPTACIÓN DE CAPACIDAD ECONÓMICA. LO ANTERIOR EN PERJUICIO DEL INTERÉS ÓPTIMO DEL MENOR, ACREEDOR DE LA PENSIÓN ALIMENTARIA Y EN CONTRAVERCIÓN DE LA POLÍTICA PÚBLICA DEL ESTADO.

## II.

### A.

El recurso de *certiorari* está regulado por nuestro ordenamiento procesal civil. Así pues, en la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, se dispone como regla general, que el referido auto solo se expedirá cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. A manera de excepción, este Tribunal, ante un recurso de *certiorari*, podrá revisar órdenes o resoluciones interlocutorias que versen sobre la admisibilidad de testigos de hechos o peritos

esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, casos de relaciones de familia, casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

En lo relacionado al auto de *certiorari,* es sabido, que se define como un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las decisiones de un tribunal inferior. 32 LPRA sec. 3491; *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al v. BBVAPR,* 185 DPR 307, 337 (2012). A su vez, posibilita atender determinaciones, mayormente interlocutorias, que no son finales del foro de origen. *Yumac Home v. Empresas Massó*, 194 DPR 96, 106 (2015). En esencia, este mecanismo procesal permite al foro revisor corregir algún error cometido por el tribunal de menor jerarquía. *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016). El referido recurso es uno de carácter discrecional. Esta discreción, ha sido definida jurisprudencialmente "como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera*." Negrón v. Srio de Justicia*, 154 DPR 79, 91 (2001).

Cabe señalar, que el auto de *certiorari* está delimitado por la Regla 40 de este Tribunal. Mediante la misma, se establecen una serie de criterios que ayudan a dirigir el juicio de este Foro en la decisión de expedir o denegar el auto solicitado. Dichos criterios reglamentarios son los siguientes:

> A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B) Si la situación de los hechos planteada es la más indicada para analizar el problema.
>
> C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.

D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.

E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40.

El delimitar la revisión judicial a los parámetros de la Regla 40, *supra,* contribuye a no caer en una dilación innecesaria de los procedimientos. Particularmente, se evita revisar controversias que pudieran esperar a ser esbozadas en un recurso apelativo. *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486 (2019). En cuanto a la facultad discrecional de denegar o expedir el auto solicitado, el tribunal, de forma comedida, puede inclinarse a expedir el recurso y adjudicarlo en sus méritos. Al tomar la referida decisión, el foro revisor asume jurisdicción sobre el asunto expuesto ante su consideración. Así pues, revisa e interviene con las decisiones del foro recurrido, para auscultar que estas sean justas y conforme a la normativa aplicable. *Negrón v. Srio. de Justicia,* supra.

**B.**

En nuestra jurisdicción, los casos de alimentos están revestidos del más alto interés público. *Díaz Rodríguez v. García Neris*, 208 DPR 706, 717 (2022). A través del referido interés, se pretende velar por el mejor bienestar del menor, el cual forma una parte vital de la política pública del Gobierno de Puerto Rico.[1] *De León Ramos v. Navarro Acevedo*, 195 DPR 157, 169 (2016). Además, es preciso destacar que el derecho de alimentos de los menores emana del Derecho a la Vida

---

[1]Ley Orgánica de la Administración para el Sustento de Menores, Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, 8 LPRA sec. 502.

consagrado en la Constitución de Puerto Rico. *Chévere v. Levis,* 150 DPR 525, 534 (2000). En virtud de dicho derecho fundamental, los progenitores están obligados a proveer alimentos a sus hijos menores. *Rodríguez Rivera v. De León Otaño*, 191 DPR 700, 711 (2014).

En nuestro ordenamiento jurídico se ha dispuesto que el concepto de alimentos se extiende a todo lo relacionado al sustento del alimentista. Ello, incluye la habitación, el vestido, asistencia médica y la educación e intrusión, según la posición social de la familia. 8 LPRA sec. 501(7); *Santiago, Maisonet v. Maisonet Correa*, 187 DPR 550, 560 (2012). Al tomar en consideración lo anterior, la cuantía a fijarse en concepto de alimentos será proporcional con relación a los recursos que tiene el alimentante y a las necesidades del alimentista. Asimismo, dicha cuantía aumentará o disminuirá en armonía a los cambios que acontezcan tanto en las circunstancias del alimentante como del alimentista. *De León Ramos v. Navarro Acevedo*, supra, pág. 171. Cabe señalar, que los alimentos serán exigibles desde la fecha en que surge la necesidad, pero no serán abonados sino desde la presentación de la petición en solicitud de pago de alimentos. 8 LPRA sec. 518; *Pesquera Fuentes v. Colón Medina*, 202 DPR 93, 104 (2019).

El referido principio de proporcionalidad también incide en el deber de prorratear la satisfacción de alimentos entre ambos progenitores. *De León Ramos v. Navarro Acevedo*, supra, pág. 173. De igual modo y como norma general, el cómputo de los aludidos alimentos se llevará a cabo mediante unas "Guías Mandatorias para Computar las Pensiones Alimentarias en Puerto Rico," (en adelante, "Guías"). 8 LPRA sec. 518. Ahora bien, estas Guías surgen bajo los fines de implementarse en los casos en que alguno de los progenitores no responda a sus obligaciones alimentarias o exista disputa sobre la cantidad a aportar por el progenitor no custodio. *Íd,* pág. 176. Así pues, en las controversias que haya negativa de cumplir con la

obligación que ostenta cada progenitor para con su hijo o exista falta de consenso sobre el monto específico a satisfacerse en concepto de pensión alimentaria, es que se activa el descubrimiento de prueba relacionado a los ingresos de los progenitores, para de esta forma determinar la suficiencia de pago del alimentante. *Santiago, Maisonet v. Maisonet Correa*, supra, pág. 565. Empero, hay casos en los que no son de aplicabilidad las Guías, para lograr establecer un cómputo de pensiones alimentarias. Particularmente, se eximen del referido cálculo, por ser innecesario, las controversias en que el alimentante acepte capacidad económica. *Díaz Rodríguez v. García Neris*, supra, pág. 719.

Cuando un alimentante acepta capacidad económica está, por medio de ello, admitiendo que cuenta con los medios necesarios y suficientes para satisfacer las necesidades alimentarias de sus hijos menores. *De León Ramos v. Navarro Acevedo*, supra, pág. 173. Es meritorio destacar, que la aceptación de capacidad económica es una decisión voluntaria del alimentante, a través de la cual se compromete a cubrir todos los gastos necesarios que en su día se fijen como parte de una pensión de alimentos. *Íd,* pág. 176. Mediante esta asunción de responsabilidad, el progenitor alimentante promueve el interés púbico del mejor bienestar de los menores, y agiliza el procedimiento para establecer una pensión alimentaria. *Santiago, Maisonet v. Maisonet Correa, supra,* pág. 565*; Chévere v. Levis,* supra, pág. 544. En consecuencia, el aceptar capacidad económica, torna inmeritorio el descubrimiento de prueba y protege la información patrimonial del progenitor aceptante. *De León Ramos v. Navarro Acevedo*, supra, pág. 174. "Esta limitación se extiende a todo descubrimiento de prueba del alimentante, incluyendo su estilo de vida, por entenderse [innecesario]." *Íd,* a las págs. 174-175. Una vez el alimentante expresa tal aceptación de capacidad económica, deberá pagar la totalidad de la pensión alimentaria que supla las necesidades de su hijo. *Díaz*

*Rodríguez v. García Neris,* supra, pág. 719. Además, no podrá impugnar, alegando falta de capacidad económica, la pensión que se establezca en torno a las necesidades del menor. *Santiago, Maisonet v. Maisonet Correa,* supra, pág. 565. De igual modo, ante la referida aceptación, solo resta por fijar el monto de la pensión, en atención exclusiva a las necesidades del alimentista.

Para el logro de ello, le corresponde al progenitor custodio evidenciar los gastos razonables del menor. *De León Ramos v. Navarro Acevedo,* supra, pág. 175. Entiéndase, "solo restaría determinar las necesidades del menor y la capacidad económica de la madre [o progenitor no aceptante de capacidad económica], para fijar la cuantía a la que se está obligado a pagar en concepto de alimentos." *Santiago, Maisonet v. Maisonet Correa,* supra, a la pág. 566, citando a *Ferrer v. González,* 162 DPR 172, 181 (2004). Al presentarse tal evidencia por el progenitor no aceptante de capacidad económica, el tribunal procederá a determinar "la suma justa y razonable en concepto de pensión alimentaria". *Íd,* a la pág. 565. Estos alimentos serán abonados desde la fecha en que se presentó la correspondiente solicitud de pago de alimentos. *Pesquera Fuentes v. Colón Medina,* supra, a la pág. 104.

**III**.

En el caso ante nuestra consideración, la peticionaria argumenta que el foro recurrido incidió al no permitir el descubrimiento de prueba para el periodo de tiempo anterior a la aceptación de capacidad económica del recurrido. A la luz de ello, la peticionaria menciona que erró el foro de instancia al no permitir el descubrimiento de prueba, específicamente, para el periodo que comprende desde el 1 de agosto de 2022 hasta el 19 de mayo de 2023.

En el quehacer de su discreción, el Tribunal de Primera Instancia, en esta primera solicitud de alimentos no provisionales, se limitó a aceptar la alegación de capacidad económica del recurrido y,

en consecuencia, declarar improcedente el descubrimiento de prueba en relación con los ingresos del recurrido, según lo requiere la doctrina jurídica para este tipo de casos. No obstante, el foro primario no entró a dilucidar el aspecto prospectivo o retroactivo de la aceptación de capacidad económica, tal cual se plantea en el error señalado por la peticionaria. Ante tal dictamen del tribunal de origen, solo resta que la peticionaria presente evidencia sobre los gastos razonables del menor, para así establecer la cuantía que debe satisfacer el recurrido en concepto de pensión alimentaria. Es preciso destacar que, conforme a la doctrina previamente esbozada, el recurrido debe pagar el cien por ciento (100%) de los gastos razonables del menor, de acuerdo con la evidencia de las necesidades del referido alimentista. Ello, no requiere descubrir prueba sobre los ingresos del recurrido, toda vez que, la referida aceptación de capacidad económica representa un acto voluntario, el cual nuestro marco jurídico favorece por ser este cónsono al interés óptimo del menor.

De otra parte, se hace meritorio aclarar que, distinto al precedente establecido en *Pesquera Fuentes v. Colón Molina*, supra, el caso de epígrafe no versa sobre una adjudicación final y firme de pensión alimentaria. Por el contrario, el caso de autos se basa en un trámite inicial de adjudicación de pensión alimentaria, en el cual solo existe una pensión establecida de forma provisional. Por tanto, la capacidad económica del alimentante no representa un cambio en las circunstancias de progenitor que amerite comenzar un proceso de revisión, a partir de la aceptación de capacidad económica y aparte del proceso previamente iniciado y adjudicado, tal cual pasó en el caso de *Pesquera Fuentes v. Colón Molina*, supra, toda vez que, en la controversia ante nuestra consideración, ni siquiera se ha establecido un cómputo de pensión alimentaria que no sea provisional. Por tanto, el no existir una fijación de pensión alimentaria acorde con las

Planillas de Información Personal y Económica presentadas por las partes, reitera la realidad fáctica de que nos encontramos ante una adjudicación inicial de pensión alimentaria, en la que la aceptación de capacidad económica detiene todo descubrimiento de prueba en relación con los ingresos del alimentante.

De igual modo, entendemos que la determinación recurrida es conforme a la normativa jurídica establecida para este tipo de controversias, dado que el descubrimiento de prueba para estos casos se enmarca en las instancias en que un progenitor se niega a satisfacer los gastos del alimentista o existe disputa en cuanto a la cuantía a pagar en concepto de alimentos. No existiendo tal negativa por parte del recurrido, ni la existencia de una pensión alimentaria sobre la cual no haya consenso entre las partes, procede confirmar al foro primario en su determinación.

**IV**.

Por los fundamentos esbozados, se expide el auto de *certiorari* presentado y se confirma la resolución recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones