Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| NIURY MIRAS ESTEVA<br><br>*Apelada*<br><br><br>v.<br><br><br>JORGE ENRIQUE CLASS GAGO<br><br>*Apelante* | KLCE202500326 | *Certiorari* **acogido como Apelación** procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.:<br>F DI2016-0148<br><br>Sobre:<br>Divorcio |

Panel integrado por su presidenta, la Jueza Santiago Calderón, la Jueza Álvarez Esnard y la Jueza Mateu Meléndez[2]

Santiago Calderón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 13 de mayo de 2025.

Comparece ante nos, el Sr. Jorge Enrique Class Gago (señor Class Gago o apelante) mediante recurso de *Certiorari*[3] presentado el 31 de marzo de 2025, y nos solicita que revisemos la *Resolución* emitida el 27 de febrero de 2025, notificada el 28 de febrero de 2025, por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI o foro recurrido). En dicha *Resolución,* el TPI ordenó al apelante reembolsar la cantidad de seis mil novecientos diecinueve dólares con veinticinco centavos ($6,919.25) por concepto de "gastos suplementarios" como parte de la pensión alimenticia del menor

---

[1] El recurso de epígrafe fue asignado a este panel por virtud de lo dispuesto en la Orden Administrativa OAJP-2021-086, de 4 de noviembre de 2021, con efectividad del 10 de enero de 2022, sobre Normas para la Asignación de Recursos Nuevos Previamente Presentados en el Tribunal de Apelaciones. Como consecuencia de la referida orden, este recurso, así como todo recurso futuro que surja del caso de referencia, pendiente ante el Tribunal de Primera Instancia, será atendido por los integrantes de este panel.

[2] Véase la Orden Administrativa OATA-2025-046.

[3] Acogemos el recurso de *certiorari* como una *apelación* por ser el mecanismo adecuado para la revisión de la determinación recurrida. Esto, debido a que, las determinaciones sobre pensiones alimentarias, incluyendo aquellas en las que se modifican o intentan modificar dictámenes finales previos, constituyen propiamente sentencias de las cuales se puede interponer un recurso de apelación. *Otero Vélez v. Schroder Muñoz*, 200 DPR 76, 86 (2018); *Cortés Pagán v. González Colón,* 184 DPR 807, 815 (2012); *Figueroa v. Del Rosario,* 147 DPR 121, 129 (1998). Sin embargo, por motivos de economía procesal, conservamos la designación alfanumérica asignada por la Secretaría de este Tribunal.

J.I.C.M., toda vez que el señor Class Gago aceptó capacidad económica.

Examinada, la totalidad del expediente y el estado de derecho aplicable, se **modifica** la *Resolución* recurrida y, así modificada, se **confirma**, por los fundamentos que expondremos a continuación.

**I.**

Conforme al expediente ante nuestra consideración, el caso dio inicio el 25 de agosto de 2016, cuando el TPI adoptó mediante una *Resolución* ciertas estipulaciones concernientes a la pensión alimentaria del menor J.I.C.M., recomendadas en el *Informe* del Examinador de Pensiones Alimentarias, el Lcdo. Joel Castro Pérez[4]. Además, del referido *Informe* aprobado, surgió que el señor Class Gago confirmó su capacidad económica.

Las estipulaciones fueron las siguientes:

1. Se fije al demandado una pensión alimentaria de $1,350 mensual, mediante pago directo, a ser depositada en cuenta bancaria, a partir del 1 de septiembre de 2016, para beneficio del menor, [J.I.C.M.], de 12 años de edad.
2. El demandado sufragará el 100% de los gastos de materiales escolares, uniformes y libros, a ser reembolsados en un término de 15 días, mediante presentación de evidencia y pago directo.
3. Los gastos médicos extraordinarios mayores de $100 serán satisfechos por las partes a razón de un 50% cada parte. Estos gastos no incluyen aquellos relacionados a la condición de diabetes del menor[5].

Transcurrido algún tiempo, el 24 de noviembre de 2020, la Sra. Niury Miras Esteva (señora Miras Esteva o apelada) presentó una *Moción en Solicitud de Desacato*, en la cual solicitó al foro recurrido la imposición de desacato al apelante por razón de que le había pedido el reembolso de ciertos "gastos suplementarios" para los años 2018, 2019 y 2020, los cuales ascendían a seis mil

---

[4] Apéndice, pág. 3.
[5] *Íd.*, pág. 2.

novecientos diecinueve dólares con veinticinco centavos ($6,919.25) por concepto de gastos médicos, de laboratorios y escolares[6]. El petitorio de la apelada se sustentó en las estipulaciones adoptadas por el TPI y la aceptación de capacidad económica por parte del alimentante.

En oposición, el señor Class Gago arguyó que la prueba de dichos gastos no se le había remitido, que no se aceptaba el cálculo para el reembolso de los gastos médicos no relacionados a la diabetes y no mayores a cien dólares ($100.00), y que los gastos escolares relacionados a la matrícula estaban ya incluidos en la pensión fija de mil trecientos cincuenta dólares ($1,350.00). Por lo cual, sostuvo que no procedía el desacato y que debía reembolsar solamente la cantidad de tres mil doscientos cincuenta y tres dólares con setenta y seis centavos ($3,253.76) por los gastos extraordinarios[7].

Luego de varios incidentes procesales, el 18 de agosto de 2022, el TPI emitió una *Resolución* en la cual resolvió los escritos sometidos y, en consecuencia, ordenó el reembolso de los "gastos suplementarios" según lo allí expuesto. Al respecto, dictó lo siguiente:

> [R]esolvemos que el padre aportará 100% de todos los gastos extraordinarios del menor y de todos los gastos relacionados directa o indirectamente con su condición de diabetes. Lo anterior a tenor con la normativa que cobija la asunción de capacidad del alimentante para cubrir los gastos del menor. Por otro lado, y según dispone la Orden de Alimentos del 2016, las partes aportarán el 50% de los gastos mayores a $100.00 que no estén relacionados a la condición de diabetes del menor. Sobre estos gastos, los gastos se considerarán de manera individual y por recibo. Cada recibo serán un gasto independiente, siempre que no haya sido efectuado el mismo día. No se agruparán recibos para obtener una cantidad acumulada de reembolso. Los reembolsos de gastos escolares en los que aplique la Orden de Alimentos del 2016 no incluirán los gastos de matrícula por haberse incluido este gasto en la mensualidad de pensión establecida[8].

---

[6] *Íd.*, págs. 4-5.
[7] *Íd.*, págs. 61-64.
[8] *Íd.*, pág. 86.

En consonancia con la *Resolución*, el 30 de marzo de 2023, la señora Miras Esteva presentó *Moción en Solicitud de Resolución sobre Deuda de Gastos Suplementarios*, en la cual ajustó la cantidad reclamada a lo ordenado por el TPI al descontar los gastos de matrícula, toda vez, que los mismos se incluyeron en la mensualidad de pensión establecida mediante la orden del 25 de agosto de 2016[9]. De tal manera, la cantidad que reclamó por "gastos suplementarios" para los años 2018, 2019 y 2020 ascendió a un total de cuatro mil ciento noventa y cuatro dólares con setenta y un centavos ($4,194.71).

Por su parte, el 6 de septiembre de 2022, el apelante presentó una *Solicitud de Reconsideración o Aclaración de Resolución*[10]. En esta, arguyó que el foro recurrido debía reconsiderar y aclarar el término de "gastos extraordinarios", pues, según sostuvo, el TPI lo usó indistintamente para referirse a gastos médicos extraordinarios y a gastos extraordinarios en general.

Así las cosas, el 27 de febrero de 2025, el foro recurrido declaró *No Ha Lugar* la moción de reconsideración presentada por el apelante[11]. Además, aclaró que "según se lee de la propia Resolución de alimentos que imperaba al momento de surgir los reclamos y reembolsos solicitados por la demandante, el demandado asumió capacidad y debe pagar el 100% de los gastos suplementarios y extraordinarios del menor, excepto los específicamente acordados"[12]. Asimismo, determinó que la deuda por el reembolso de los "gastos suplementarios" para las fechas del 2018 al 2020 ascendía a seis mil novecientos diecinueve dólares con veinticinco centavos ($6,919.25). Finalmente, le impuso al apelante la cantidad

---

[9] *Íd.*, págs. 94-96. Véase, *Íd.*, págs. 28 y 52 (donde se desglosa los costos de matrícula para los años 2018 y 2020).
[10] *Íd.*, pág. 87.
[11] *Íd.*, págs. 149-152.
[12] *Íd.*, pág. 151.

de mil quinientos dólares ($1,500.00) por concepto de honorarios de abogado, debido al incumplimiento con el reembolso.

Inconforme con el dictamen del TPI, el señor Class Gago acude ante nos y le imputa al foro recurrido la comisión del siguiente error:

> Erró el Tribunal de Primera Instancia, Sala de Carolina, por voz del Honorable Juez Fernando L. Abreu Arias al variar el contenido de una estipulación sobre alimentos recomendada por el Examinador de Pensiones Alimentaria, Lcdo. Joel I. Castro Pérez, y aceptada por el Hon. Juez Javier R. Varela Rivera. Erró, además, al determinar una cuantía diferente a la reclamada e imponer honorarios de abogado.

Por su parte, el 30 de abril de 2025, la señora Miras Esteva presentó su *Alegato en Oposición al Recurso de Certiorari*. En apretada síntesis, la apelada adujo que, el recurso debía ser denegado pues no existían fundamentos para intervenir con la discreción del foro apelado pues el señor Class Gago había aceptado capacidad económica.

Contando con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II.

### -A-

En nuestro ordenamiento jurídico es norma reiterada que los jueces de instancia son quienes están en mejor posición de aquilatar la prueba que tienen ante sí, por lo que la apreciación que estos realizan de dicha prueba merece de nuestra parte, como tribunal revisor, gran respeto y deferencia[13]. Es por ello que, en ausencia de error manifiesto, prejuicio, pasión o parcialidad, no intervendremos con las conclusiones de hechos o con la apreciación de la prueba que haya realizado el foro primario[14]. Los tribunales apelativos debemos brindarle deferencia al juzgador de los hechos, debido a que es este quien se encuentra en mejor posición para evaluar la credibilidad de un testigo. Debido a que los foros apelativos

---

[13] *Pérez Cruz v. Hosp. La Concepción*, 115 DPR 721, 728 (1984).
[14] *Íd.*

contamos con récords mudos e inexpresivos, debemos respetar la adjudicación de credibilidad realizada por el juzgador primario de los hechos[15].

No obstante, aunque impera la regla de deferencia podremos intervenir con estas conclusiones cuando la apreciación de la prueba que realizó el foro primario no represente el balance más racional, justiciero y jurídico de la totalidad de la prueba[16]. Así pues, la parte que cuestione una determinación de hechos realizada por el tribunal de instancia debe señalar el error manifiesto o fundamentar la existencia de pasión, prejuicio o parcialidad[17].

**-B-**

Procurar el bienestar de los menores constituye un pilar fundamental de nuestra sociedad y se ha reconocido como parte integral de la política pública del Gobierno de Puerto Rico[18]. El derecho de los menores a recibir alimentos va de la mano con el derecho a la vida consagrado en la Carta de Derechos de nuestra Constitución[19]. El deber de alimentar a los hijos es inherente a la paternidad, por lo que se origina desde el mismo momento en que la relación filial queda legalmente establecida[20].

La obligación alimentaria está expresamente consignada en el Código Civil[21]. No obstante, en aras de asegurar su cumplimiento y de este modo velar porque se implemente la política pública dirigida a que se atiendan las necesidades de los hijos menores por aquellos llamados a hacerlo, se promulgó la Ley Núm. 5 del 30 de diciembre de 1986, conocida como *Ley Orgánica de la Administración para el*

---

[15] *Trinidad v. Chade,* 153 DPR 280, 291 (2001).

[16] *Ortiz v. Cruz Pabón,* 103 DPR 939, 946 (1975).

[17] *S.L.G. Rivera Carrasquillo v. A.A.A.,* 177 DPR 345, 356 (2009).

[18] *De León Ramos v. Navarro Acevedo,* 195 DPR 157, 169-170 (2016); *Santiago, Maisonet v. Maisonet Correa,* 187 DPR 550 (2012); *Llorens Becerra v. Mora Monteserín,* 178 DPR 1003 (2010).

[19] Art. II, Sec. 7, Const. PR, LPRA, Tomo 1; *De León Ramos v. Navarro Acevedo, supra,* pág. 169; *Santiago, Maisonet v. Maisonet Correa, supra,* pág. 560.

[20] *De León Ramos v. Navarro Acevedo, supra,* pág. 169.

[21] Véase, Arts. 653-680 del Código Civil de Puerto Rico, 31 LPRA secs. 7531-7582.

*Sustento de Menores*[22]. De esta manera se trató de corregir la indolencia prevaleciente entre muchos padres ante las responsabilidades económicas para con sus hijos. Según los términos del Art. 19(a) de la Ley Núm. 5 del 30 de diciembre de 1986, se prepararon unas Guías, basadas en criterios numéricos y descriptivos, para utilizarse en el cómputo o modificación de las pensiones alimentarias de los menores[23]. Estas Guías tienen como propósito uniformar y facilitar el cálculo de las pensiones[24].

En lo pertinente, el Máximo Foro Judicial ha reconocido que, **cuando un padre o madre alimentante admite que cuenta con medios suficientes para satisfacer sus obligaciones alimentarias para con sus hijos menores se prescinde, por innecesario, el trámite provisto en la Ley Núm. 5 del 30 de diciembre de 1986 y las Guías**[25]. El fundamento para ello fue recogido en *Chévere v. Levis*, ocasión en la cual el Tribunal Supremo expresó que:

> [C]uando un padre alimentante acepta que posee suficientes ingresos para pagar la pensión alimentaria que en derecho proceda a favor de sus hijos, promueve, con acierto, el interés público del bienestar de los menores y agiliza los procedimientos en cuanto a la otorgación de pensiones alimentarias[26].

La **aceptación de capacidad económica** acarrea <u>consecuencias</u> importantes para el alimentante: (1) quien acepte su capacidad económica queda impedido de posteriormente impugnar la pensión que se establezca aduciendo que no cuenta con los recursos necesarios para ello; (2) la información sobre el patrimonio de la persona que acepta capacidad queda protegida y no podrá descubrirse prueba sobre sus ingresos ni estilo de vida, y (3) el alimentante está obligado a cubrir el 100% de la pensión adjudicada, lo que hace imposible activar el mecanismo delineado

---

[22] Ley Orgánica de la Administración para el Sustento de Menores, Ley Núm. 5 del 30 de diciembre de 1986, 8 LPRA sec. 501 *et seq.*
[23] Art. 19(a) Ley Núm. 5 del 30 de diciembre de 1986, 8 LPRA sec. 518.
[24] *De León Ramos v. Navarro Acevedo, supra*, pág. 170.
[25] *Íd.,* pág. 173.
[26] *Chévere v. Levis*, 150 DPR 525, 544 (2000).

en las Guías para adjudicar porcientos de responsabilidad entre los progenitores[27]. Así pues, en una situación en que uno de los progenitores acepta tener capacidad para suplir las necesidades económicas de sus hijos, <u>únicamente resta fijar el monto de la pensión en atención exclusivamente a las necesidades del menor</u>[28]. En estos casos, le corresponde a la persona custodia presentar evidencia de los gastos razonables de los menores para entonces determinar el total de la pensión que el alimentante debe pagar.

Asimismo, cabe señalar que la decisión de aceptar la capacidad económica es una enteramente voluntaria y tomada por razones ajenas al proceso relacionado a la fijación de alimentos. Únicamente compete al adjudicador el resultado práctico de esta determinación personal. Cuando esto ocurre, se aligeran los procesos y salen beneficiadas todas las partes afectadas, así como el sistema judicial. Pero, al ser una decisión voluntaria, se retiene la capacidad de retirarla[29].

Por su parte, es principio reiterado en materia de alimentos que las sentencias que los fijan no constituyen cosa juzgada, por lo que siempre estarán sujetas a revisión de ocurrir algún cambio en las circunstancias del alimentante o del alimentista que así lo amerite[30].

Finalmente, el Art. 22(1) de la Ley Núm. 5 de 30 de diciembre de 1986 expresa que en cualquier procedimiento para hacer efectiva una orden de pensión alimentaria, el tribunal deberá imponer al alimentante el pago de honorarios de abogado a favor del alimentista cuando este prevalezca[31]. Al respecto, en *Llorens Becerra v. Mora Monteserín* el Tribunal Supremo pautó que la imposición de los honorarios de abogado a favor de los menores, en una acción para

---

[27] *De León Ramos v. Navarro Acevedo, supra*, pág. 158.
[28] *Íd.*, pág. 159.
[29] *Íd.*, pág. 179.
[30] *Cortés Pagán v. González Colón, supra; McConnell v. Palau, supra.*
[31] Art. 22(1) de la Ley Núm. 5 de 30 de diciembre de 1986, *supra*.

reclamar alimentos a favor de estos, procede sin la necesidad de que el demandado incurra en temeridad, pues esta partida es parte de los alimentos a los que tiene derecho el menor alimentista[32]. El criterio que estableció para la imposición de los honorarios de abogado es uno de razonabilidad; en cuanto a ello, el Máximo Foro Judicial estableció que "no procede intervenir con los honorarios de abogado que conceda el foro primario, salvo que la suma concedida sea irrazonable"[33].

**III.**

En síntesis, el apelante alegó que el foro recurrido erró: (a) al variar el contenido de una estipulación sobre alimentos recomendada por el Examinador de Pensiones Alimentarias, debido a que le ordenó cubrir el 100% de los gastos suplementarios y extraordinarios del menor, excepto los específicamente acordados, (b) al ordenar el reembolso de una cuantía diferente a la reclamada, y (c) al imponer honorarios de abogado.

Colegimos que, al apelante no le asiste la razón en cuanto a su impugnación sobre la cubierta de los gastos extraordinarios del menor. No obstante, procede modificar el dictamen del TPI en cuanto a la cuantía por el reembolso de los gastos suplementarios y/o extraordinarios. Veamos.

En primer lugar, surge de la orden del 25 de agosto de 2016, que el apelante confirmó su capacidad económica para alimentar al menor J.I.C.M. Por lo tanto, el señor Class Gago estaba impedido de impugnar la pensión establecida, a menos que renunciara voluntariamente a su capacidad económica[34]. Una vez el apelante aceptó tener capacidad para suplir las necesidades económicas de su hijo, el único asunto que faltaba por atender era fijar el monto de

---

[32] *Llorens Becerra v. Mora Monteserín, supra*, pág. 1035.
[33] *Íd.*
[34] *De León Ramos v. Navarro Acevedo, supra*. Véase, además, *Llorens Becerra v. Mora Monteserín, supra*.

la pensión en atención exclusivamente a las necesidades del menor[35]. Pertinente a la controversia que nos ocupa, el menor tuvo unos "gastos suplementarios" entre los años 2018 al 2020, los cuales eran razonables y necesarios en atención a su situación en particular. Igualmente, el TPI, en su autoridad legítima, ordenó que el señor Class Gago debía cubrir el cien por ciento (100%) de los "gastos extraordinarios". Todas estas partidas eran parte de los alimentos debidos al menor y el apelante aceptó su capacidad económica para pagarlos. Por lo cual, el TPI actuó correctamente en su *Resolución.*

En segundo lugar, hacemos constar que la *Resolución* recurrida del 18 de agosto de 2022 ordenó que "[l]os reembolsos de gastos escolares en los que aplique la Orden de Alimentos del 2016, **no incluirán los gastos de matrícula, por haberse incluido este gasto en la mensualidad de pensión establecida**"[36]. En cumplimiento con la instrucción del foro apelado, la señora Miras Esteva ajustó la cantidad reclamada por el reembolso de los "gastos suplementarios" para restar los gastos por concepto de matrícula en su *Moción en Solicitud de Resolución sobre Deuda de Gastos Suplementarios* presentada el 30 de marzo de 2023[37]. Por consiguiente, la cantidad que reclamó por "gastos suplementarios" para los años 2018, 2019 y 2020 ascendía a un total de cuatro mil ciento noventa y cuatro dólares con setenta y un centavos ($4,194.71). De esta suma, se excluyeron los costos de matrícula correspondientes a los años 2018 y 2020, los cuales ascienden a mil cuarenta y cinco dólares ($1,045.00) y mil quinientos veinticinco dólares ($1,525.00), respectivamente.

---

[35] *De León Ramos v. Navarro Acevedo, supra.*
[36] Apéndice, pág. 86 (énfasis suplido).
[37] *Íd.,* págs. 94-96. Véase, *Íd.,* págs. 28 y 52 (donde se desglosa los costos de matrícula para los años 2018 y 2020).

Sin embargo, en la *Resolución* del 27 de febrero de 2025, la cual declaró *No Ha Lugar* la solicitud de reconsideración del apelante, el TPI resolvió que la deuda por el reembolso de los "gastos suplementarios" para las fechas del 2018 al 2020 ascendía a seis mil novecientos diecinueve dorales con veinticinco centavos ($6,919.25)[38]. Somos del criterio que el foro recurrido erró en la cuantía ordenada, puesto que contradice lo que dispuso en la *Resolución* recurrida en cuanto a que **los gastos por matrícula forman parte de la pensión mensual establecida**. Por lo cual, **se modifica el dictamen del TPI para ordenar al apelante a reembolsar la cantidad de cuatro mil ciento noventa y cuatro dólares con setenta y un centavos ($4,194.71)**.

Finalmente, como adelantamos en la exposición del derecho, "la imposición de los honorarios de abogado a favor de los menores, en una acción para reclamar alimentos a favor de éstos, procede sin la necesidad de que el demandado incurra en temeridad, pues esta partida es parte de los alimentos a los que tiene derecho el menor alimentista"[39]. Asimismo, "no procede intervenir con los honorarios de abogado que conceda el foro primario, salvo que la suma concedida sea irrazonable"[40]. En lo que respecta al caso de autos, el TPI le impuso al apelante la cantidad de mil quinientos dólares ($1,500.00) por concepto de honorarios de abogado debido al incumplimiento con el reembolso. Reiteradamente, el apelante incumplió con su deber de reembolsar los gastos, lo cual obligó a la señora Miras Esteva a acudir al TPI desde el año 2020 en varias ocasiones a exigirlos en representación del menor J.I.C.M. Ante los esfuerzos infructuosos y prolongados de la apelada, no nos parece

---

[38] *Íd.*, pág. 151.
[39] *Llorens Becerra v. Mora Monteserín, supra*, pág. 1035.
[40] *Íd.*

meritorio intervenir con la imposición de honorarios de abogado que realizó el foro recurrido.

**IV.**

Por todo lo cual, *modificamos* el dictamen del TPI en cuanto a las cuantías a ser reembolsadas. En consecuencia, **ordenamos al apelante a reembolsar la cantidad de cuatro mil ciento noventa y cuatro dólares con setenta y un centavos ($4,194.71)** y, así modificado, *confirmamos* la *Resolución* recurrida.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones