Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| IRIS MORAIMA MORA RODRÍGUEZ<br><br>Peticionaria<br><br>Vs.<br><br>JOSÉ MANUEL FONTÁNEZ RIVERA<br><br>Recurrido | TA2025CE00239 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm. BY2020RF00714<br><br>Sobre: Divorcio |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Cruz Hiraldo y el Juez Sánchez Báez.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 9 de octubre de 2025.

La parte peticionaria, Iris Moraima Mora Rodríguez, solicita la revisión de las órdenes notificadas el 3 de julio de 2025, por el Tribunal de Primera Instancia, Sala de Bayamón. Mediante las órdenes, el foro primario declinó considerar el asunto sobre el acuerdo de mitigación de hipoteca traído por la parte peticionaria, y ordenó la presentación de evidencia sobre el gasto de graduación reclamado por la peticionaria ante la Examinadora de Pensiones Alimentarias.

Por los fundamentos que expondremos a continuación, *expedimos* el auto solicitado, y *revocamos* los dictámenes recurridos.

*-I-*

El 9 de enero de 2025, la parte peticionaria solicitó la revisión de la pensión de alimentos establecida a favor de la menor, hija de las partes del epígrafe. El tribunal refirió el asunto a la Examinadora de Pensiones Alimentarias. El 18 de febrero del

2025, la parte peticionaria presentó una urgente solicitud de orden sobre hogar seguro. En el escrito solicitó una "orden para que el demandado cooperara con la demandante para la firma con el banco sobre el proceso de "loss mitigation". Mediante orden del 20 de febrero del 2025, el foro primario, ordenó a la parte recurrida, el señor José Manuel Fontánez Rivera: "a comparecer al Banco para que se puedan realizar las gestiones de Loss Mitigation con vías de que la propiedad no se pierda. No entendemos cuál es la razón de la negativa toda vez que es la menor la que también se beneficia". La examinadora de pensiones celebró la vista el 25 de febrero de 2025. Según la hoja de trabajo, la examinadora en la vista consideró: (i) la solicitud de firma para el acuerdo de mitigación de pérdidas con el banco; (ii) los créditos reclamados por el recurrido sobre los pagos hipotecarios que la peticionaria falló en efectuar; (iii) el gasto médico; y (iv) los gastos de graduación. La examinadora señaló vista para el 12 de mayo de 2025 con el propósito de proveer oportunidad a las partes a efectuar descubrimiento de prueba. El 27 de febrero del 2025, la jueza que presidía el proceso se auto inhibió del caso, por motivos personales.

El 6 de marzo del 2025, la parte recurrida solicitó la reconsideración de la orden en torno al asunto de mitigación de deuda hipotecaria que grava el hogar donde reside su hija, y su anterior esposa. El recurrido expresó que:

> Los procesos de loss mitigation son altamente regulados y, la posición del compareciente no puede ser otra que sostener que el dinero destinado al pago de vivienda se le entregaba a la madre custodia, por lo que las implicaciones de no haber cumplido con los pagos y las razones que se aduzcan en el proceso le tienen que ser exclusivas a ésta.

El tribunal concedió 20 días a la peticionaria para expresarse sobre la reconsideración presentada. El 13 de marzo del

2025, la parte peticionaria presentó una moción en cumplimiento de la orden sobre la reconsideración del recurrido. En su escrito aseveró sobre el asunto con el banco:

1. ...

2. Los argumentos esbozados por el demandado en su solicitud de reconsideración sobre el pago o no de la hipoteca en nada inciden a un arreglo de pago con la hipoteca, es más le es beneficioso a las partes el realizar el proceso porque si la demandante paga menos de hipoteca el demandado pagará menos en la aportación correspondiente a la pensión suplementaria sobre ese renglón de vivienda.

3. Previo a la solicitud de revisión, el demandado en varias ocasiones había acordado con la institución bancaria para la firma de la documentación, pero luego faltaba a su compromiso.

4. Es beneficioso para todos y no hay justificación de hecho ni derecho para que el demandado NO comparezca a la firma de los documentos necesarios para el proceso de Loss Mitigation.

5. Como cuestión de hecho la demandante está pagando la hipoteca. (Se aneja evidencia).

Sometido el asunto, el 20 de marzo del 2025, el tribunal denegó la reconsideración del recurrido sobre no firmar el acuerdo de *loss mitigation.*

El 13 de marzo del 2025, la peticionaria presentó una solicitud de orden para que el recurrido aportara a ciertos gastos escolares de graduación y gastos médicos. El foro primario también concedió 20 días al recurrido para presentar su posición sobre la solicitud de gastos. El 4 de abril del 2025, la parte recurrida presentó moción en cumplimiento de orden sobre la solicitud del pago de gastos de ortodoncia y graduación. El recurrido propuso que el gasto médico reclamado por la peticionaria "sea descontado del crédito producto del impago de la deuda hipotecaria y el dinero resultante de esa omisión". En igual fecha, el tribunal concedió 20 días a la parte peticionaria para expresar su parecer sobre el

escrito presentado por el recurrido. El 25 de abril del 2025, la peticionaria presentó moción en cumplimiento de orden sobre los gastos suplementarios. En la moción enfatizó que, el recurrido podía solicitar un crédito sobre los pagos hipotecarios cuando se dividiera la sociedad de bienes gananciales; el acuerdo de mitigación de deuda beneficia a ambas partes, y que, solicitar un crédito perjudicaría a la menor porque la parte peticionaria no cuenta con suficientes ingresos para cubrir los gastos médicos de la menor. El 29 de abril del 2025 el tribunal señaló vista evidenciaria para considerar la reclamación de créditos y gastos promovida por las partes. El 19 de mayo del 2025, la peticionaria solicitó al tribunal una orden de mostrar causa en cuanto al "incumplimiento" del recurrido "en la firma el acuerdo de loss mitigation". El 21 de mayo del 2025, en la segunda vista ante la Examinadora de Pensiones, las partes acordaron modificar la pensión a $1,200.00 mensuales, más $100.00 adicionales para el pago del gasto médico, en atención a la parte proporcional que corresponde al recurrido sobre los alimentos a favor de la menor. El 13 de junio del 2025, el tribunal fijó una pensión provisional de $600.00 quincenales. También estableció que, corresponde a la peticionaria el pago de 21.87%, y al peticionario el pago 78.13% de los gastos médicos no cubiertos por el plan médico, y en igual proporción, el pago de los gastos universitarios no cubiertos por alguna beca.

El 13 de junio del 2025, el foro de primera instancia ordenó al recurrido a exponer su posición en cuanto a la solicitud de mostrar causa por la cual no obedeció la orden del 20 de febrero del 2025. En igual fecha la parte peticionaria solicitó un desacato en contra de la parte recurrida por falta de pago del gasto de la cuota de graduación. El 16 de junio del 2025 el foro primario emitió una orden concediéndole al recurrido "hasta el 16 de junio

de 2025, 1:00 pm, para que exponga las razones por las cuales no se le deba encontrar incurso en desacato por el incumplimiento con el pago de pensión alimentaria". El 16 de junio del 2025 el recurrido compareció mediante una moción en cumplimiento y oposición a desacato, aseverando que los gastos de graduación no forman parte de la resolución provisional de alimentos. Argumentó que: [e]n ningún momento se estipuló el aludido gasto, máxime cuando la pensión fue aumentada significativamente" y que "tampoco lee la resolución el pago del referido 78.13% sobre gastos escolares, sino específicamente sobre gastos universitarios no cubiertos por la beca".

El foro de primera instancia denegó el desacato solicitado en contra de la parte recurrida: "atendida la urgente solicitud de desacato y orden presentada por la demandante, y el cumplimiento de orden y oposición a desacato presentada por el demandado; se dispone NO HA LUGAR a la solicitud de desacato. Los planteamientos deben ser presentados en la vista ante la EPA". El 30 de junio del 2025, la peticionaria solicitó reconsideración, aseveró que correspondía al tribunal, y no a la Examinadora, resolver los planteamientos relacionados al desacato solicitado. En la vista del 30 de junio de 2025, la Examinadora indicó que debía referir el asunto del desacato ante la juez, y en consideración a que el descubrimiento de prueba no había culminado, señaló vista para el 2 de septiembre de 2025. El 3 de julio del 2025 compareció el recurrido, y aseveró que el foro primario carecía de jurisdicción "para autorizar, requerir o validar acuerdos de modificación hipotecaria o procesos de loss mitigation" porque se acogió a "los beneficios del proceso de quiebra". Finalmente, el 3 de julio del 2025, el foro recurrido emitió las órdenes apeladas. Mediante la primera concluyó que los gastos de graduación no surgen de la *Resolución Provisional de Alimentos*, asunto que debe ser resuelto

en la vista final de alimentos señalada por la Examinadora de Pensiones. En cuanto a la solicitud de desacato, el tribunal concluyó que "no tiene ante su consideración controversia alguna sobre el proceso de loss mitigation que pueda haber sido iniciado por las partes".

Inconforme, la parte peticionaria señala los siguientes errores:

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR NO HA LUGAR LA SOLICITUD DE RECONSIDERACIÓN PRESENTADA POR LA DEMANDANTE-PETICIONARIA INDICANDO QUE LOS PLANTEAMIENTOS SOBRE DESACATO SE TENIAN QUE PLANTEAR EN LA VISTA FINAL ANTE LA EPA

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR NO HA LUGAR LA ORDEN DE MOSTRAR CAUSA POR QUE NO TEN[Í]A ANTE SU CONSIDERACION CONTROVERSIA ALGUNA SOBRE EL PROCESO DE LOSS MITIGATION

Examinado el recurso promovido, concedimos un plazo al recurrido para comparecer mediante alegato escrito, sin embargo, no lo hizo dentro del término concedido. En consecuencia, resolvemos sin el beneficio de su comparecencia.

*-II-*

*-A-*

El auto extraordinario de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal apelativo revisar las determinaciones del tribunal de origen. *Pueblo v. Díaz de León,* 176 DPR 913, 917 (2009); *García v. Padró,* 165 DPR 324, 334 (2005). La característica distintiva del recurso es la discreción encomendada al tribunal revisor para autorizar su expedición, y adjudicar los méritos de la cuestión presentada. El concepto discreción necesariamente implica la facultad de elegir entre diversas opciones. "Sin embargo, en el ámbito judicial, la discreción no debe hacer abstracción del resto del Derecho. ... Es

decir, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una condición justiciera". *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009); *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008); *García v. Padró*, *supra*, págs. 334–335.

La controversia presentada ante este tribunal versa sobre un asunto post sentencia. En vista de ello, el recurso de *certiorari* es el mecanismo adecuado para solicitar la revisión conforme a lo resuelto expresamente en *IG Builders et al. v. BBVAPR*, 185 DPR 307, 339 (2012). De imponerse las limitaciones de la Regla 52.1, 32 LPRA Ap. V, a la revisión de dictámenes post sentencia, la parte peticionaria quedaría inevitablemente sin posibilidad de ejercer su derecho de revisión apelativa. *Íd.*

La Regla 40 del Reglamento del Tribunal de Apelaciones adquiere mayor importancia en casos como el de epígrafe, en los que no están disponibles métodos alternos para asegurar la revisión de la determinación cuestionada, pues se corre el riesgo "de que fallos erróneos nunca se vean sujetos a examen judicial simplemente porque ocurren en una etapa tardía en el proceso, tal como lo es la ejecución de sentencia". *Íd.* Para determinar si procede la expedición de un recurso discrecional de *certiorari* en determinaciones post sentencia, es preciso acudir a la Regla 40 del Reglamento del Tribunal de Apelaciones. *Banco Popular de Puerto Rico v. Gómez Alayón*, 213 DPR 314, 336-337 (2023). Los criterios enumerados en la Regla 40 sirven de guía para determinar la procedencia de la expedición del auto discrecional de *certiorari*. *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 596 (2011). "La característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *IG Builders et al. v. BBVAPR*, *supra*, pág. 338.

En un procedimiento post sentencia, este tribunal debe evaluar el recurso de *certiorari* a la luz de los criterios especificados en la Regla 40 de nuestro reglamento, que son los siguientes:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

### -*B*-

Procurar el bienestar de los menores constituye un pilar fundamental en nuestra sociedad, tal principio forma parte integral de la política pública del Gobierno de Puerto Rico. *Díaz Rodríguez v. García Neris,* 208 DPR 706, 718 (2022); *Santiago, Maisonet v. Maisonet Correa,* 187 DPR 550, 559 (2012). Además de un deber moral, es un deber jurídico legal, en el que los padres o las personas legalmente responsables son llamados a contribuir a la manutención y al bienestar de sus hijos menores dependientes. Artículo 3, *Ley Orgánica de la Administración para el Sustento de Menores,* Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, 8 LPRA sec. 502 *et seq.* El derecho de un menor a recibir alimentos va de la mano con el derecho a la vida

garantizado en la Carta de Derechos de nuestra Constitución. *James Soto v. Montes Díaz,* 213 DPR 718, 729 (2024); Art. II, Sec. 7, Const. PR, LPRA, Tomo 1.

El Artículo 590 del Código Civil, 31 LPRA sec. 7242, establece que las madres y los padres tienen el deber de alimentar a sus hijos no emancipados, tenerlos en su compañía y educarlos con arreglo a su fortuna. Según ordena el Artículo 590, el criterio rector para determinar una pensión alimentaria es que, siempre sea proporcional a los recursos del que los da y a las necesidades del que los recibe. *Franco Restro v. Rivera Aponte,* 187 DPR 137, 149–150 (2012). Por ello, se reducen o aumentan en proporción a los recursos del primero y a las necesidades del segundo. *Íd.,* pág. 150. El principio de proporcionalidad pretende alcanzar un equilibrio entre aquello que precisa el menor para su bienestar y el capital de ambos progenitores. *Llorens Becerra v. Mora Monteserín,* 178 DPR 1003, 1016-1017 (2010).

Tal determinación debe ser realizada en consideración a dos criterios principales: (i) los recursos y medios de fortuna del alimentante, de forma tal que se pueda determinar su capacidad económica para cumplir con su obligación alimentaria y (ii) las necesidades del alimentista, es decir, cuánto necesita éste para cubrir sus necesidades de sustento, habitación, vestido, asistencia médica y educación, conforme su posición social. *Martínez v. Rodríguez,* 160 DPR 145, 153 (2003). El Artículo 658, 31 LPRA sec. 7541, regula lo relacionado a los alimentos entre parientes, al disponer que los ascendientes y descendientes están obligados a proveerse alimentos de manera recíproca. El Artículo 653 del Código Civil, 31 LPRA sec. 7531, define alimentos como todo lo indispensable para el sustento, vivienda, vestimenta, recreación y asistencia médica, según la posición social de la familia. Los

alimentos también incluyen la educación del alimentista mientras es menor de edad. *Íd.*

## *-III-*

Conforme a lo establecido en *IG Builders et al. v. BBVAPR, supra,* la intervención del Tribunal de Apelaciones debe limitarse a considerar si procede la expedición de un recurso discrecional de *certiorari* sobre una determinación post sentencia al acudir directamente a los criterios establecidos en la Regla 40 del Reglamento del Tribunal de Apelaciones.

En cuanto a los méritos, debemos reiterar que la orden de mostrar causa que, es una de las controversias de este caso, solicitaba los fundamentos del incumplimiento de la orden del 20 de febrero de 2025 sobre la firma del acuerdo de mitigación de deudas con el acreedor financiero. Fundamentos que la parte peticionaria presentó, y el Tribunal de Primera Instancia evaluó. En el ejercicio de su discreción, el tribunal ordenó al recurrido a comparecer al banco y perfeccionar el acuerdo. Como confirma el tracto procesal del caso, el peticionario no ha demostrado cumplir con la orden del tribunal. El asunto quedó pendiente de resolución ante el Tribunal de Primera Instancia, y el mismo asunto motivó la comparecencia de la peticionaria ante el Tribunal de Apelaciones. Igualmente, está pendiente de resolución el gasto de graduación reclamado por la parte peticionaria. Sobre el incidente las partes han tenido amplia oportunidad de intercambiar y culminar el descubrimiento de prueba. Solo resta la resolución final del asunto por la jueza de primera instancia.

Como regla general, los tribunales están obligados a desalentar la práctica de falta de diligencia y de incumplimiento con sus órdenes mediante su efectiva, pronta y oportuna intervención. *Mejías v. Carrasquillo,* 185 DPR 288, 298 (2012). Por ello, tras examinar el trámite procesal y el derecho aplicable,

determinamos que corresponde al juez que preside los procedimientos, no a la Examinadora de Pensiones asignada al caso, celebrar una vista de mostrar causa sobre la orden incumplida. Regla 40 (A) del Reglamento del Tribunal de Apelaciones.

Los alimentos constituyen una obligación inherente a la paternidad y la maternidad, todo progenitor es responsable de suplir las necesidades de sus hijos. Nuestro Derecho provee para que los padres compartan entre ellos la carga económica que representa el sustento de su prole, en cuyo caso cada cual aportará en la medida en que su condición se lo permita. *De León Ramos v. Navarro Acevedo*, 195 DPR 157, 173 (2016). "[E]s claro que la obligación alimentaria recae en ambos progenitores, quedando así obligados a contribuir de acuerdo con su fortuna a la manutención de sus hijos. En otras palabras, la obligación es indivisible y aplica tanto al padre como a la madre". *Santiago, Maisonet v. Maisonet Correa, supra*, págs. 561–562.

En consideración a todas las premisas aquí expuestas, corresponde expedir el auto solicitado y revocar las órdenes recurridas. Ordenamos al foro recurrido a celebrar una vista de mostrar causa sobre la orden expedida el 20 de febrero de 2025 y dirimir si procede el pago de los $600.00 de gastos de graduación reclamados por la parte peticionaria.

### -*IV*-

Por los fundamentos antes expuestos, expedimos el auto de *certiorari* solicitado, *revocamos* las órdenes recurridas, *ordenamos* la celebración de una vista para mostrar causa sobre el incumplimiento del recurrido con la orden del 20 de febrero de 2025, y *ordenamos* al tribunal a adjudicar finalmente la reclamación del gasto de graduación presentado por la parte peticionaria.

Por último, al amparo de la autoridad que nos confiere la Regla 35(A)(1) de nuestro Reglamento,[1] el Tribunal de Primera Instancia no tendrá que esperar por la remisión del mandato para continuar con el trámite del caso de referencia.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[1] En lo pertinente, la citada regla dispone que la "expedición del auto de certiorari suspenderá los procedimientos en el Tribunal de Primera Instancia, **salvo que el Tribunal de Apelaciones disponga lo contrario**" (énfasis suplido).