ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| JOHN PAUL GONZÁLEZ TIRADO Y OTROS<br><br>Recurrido<br><br>v.<br><br>YOLIMAR RODRÍGUEZ ORTIZ<br><br>Peticionaria | TA2025CE00175<br><br>cons.<br><br>TA2025AP00220 | *Certiorari* y *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Casos Núm.:<br>AB2025RF00025<br>AB2024RF00031<br><br>Sobre: Alimentos |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto y el Juez Campos Pérez

Campos Pérez, Juez Ponente

**SENTENCIA[1]**

En San Juan, Puerto Rico, a 22 de octubre de 2025.

Comparece la parte demandada y peticionaria, la Sra. Yolimar Rodríguez Ortiz (señora Rodríguez Ortiz o peticionaria) mediante recurso de *certiorari.* Solicita que revoquemos dos (2) determinaciones del Tribunal de Primera Instancia, Sala Superior de Caguas (TPI), emitidas el 29 de mayo de 2025 y el 17 de junio de 2025.[2] Mediante el dictamen del 29 de mayo de 2025, el TPI declaró No Ha Lugar una *Moción Informativa y Solicitud* presentada por la señora Rodríguez Ortiz, en la que peticionó al referido foro de instancia el comienzo del descubrimiento de prueba y la celebración de una vista a los fines de fijar una pensión alimentaria final. Mediante el dictamen del 17 de junio de 2025, el TPI declaró No Ha Lugar una solicitud de *Reconsideración,* también presentada por la peticionaria.

---

[1] El recurso de *certiorari* ante nuestra consideración fue presentado el 21 de julio de 2025. Posteriormente, el 8 de agosto de 2025, la peticionaria presentó un recurso apelativo, caso número TA2025AP00220. El 19 de agosto de 2025, este Foro intermedio emitió una *Resolución* a través de la cual ordenó la consolidación de los recursos, por tratarse de los mismos hechos, de conformidad con la Orden Administrativa Núm. DJ-2019-316A.
[2] Notificadas el 30 de mayo de 2025 y el 20 de junio de 2025, respectivamente.

Por los fundamentos que expondremos, expedimos el recurso de *certiorari* y revocamos los pronunciamientos judiciales impugnados.

**I.**

El caso de epígrafe tuvo su origen el 20 de junio de 2024, cuando el demandante y recurrido, el Sr. John Paul González Tirado (señor González Tirado o recurrido) presentó una *Demanda* de custodia contra la señora Rodríguez Ortiz, caso número AB2024RF00031.[3] En suma, alegó que la hija menor de edad procreada entre las partes de epígrafe, Dayan Paulet González Rodríguez (D.P.G.R. o la menor), sufría patrones de maltratos emocionales y físicos por parte de su madre, la señora Rodríguez Ortiz. Por lo tanto, solicitó al foro inferior la custodia total de D.P.G.R. Luego de varios incidentes procesales, el 15 de abril de 2025, el TPI emitió una *Sentencia* mediante la cual acogió las recomendaciones incluidas en el *Informe Social* presentado el 6 de diciembre de 2024 por el Trabajador Social asignado al caso, el Sr. Eddie M. Rivera Solís, según ordenado por el foro recurrido.[4] Determinó que el señor González Tirado ostentaría la custodia monoparental de la menor. Asimismo, estableció un plan de relaciones filiales en la *Sentencia*.

Así las cosas, el 22 de abril de 2025, el señor González Tirado presentó una *Petición* para reclamar alimentos ante el TPI contra la señora Rodríguez Ortiz, caso número AB2025RF00025.[5] Superados varios incidentes procesales, el 8 de mayo de 2025, se celebró la vista de fijación de pensión alimentaria ante la Examinadora de Pensiones Alimentarias (EPA), la Lcda. Normarie Rivera Malavé, según señalada

---

[3] Véase, Apéndice de la peticionaria, expediente electrónico del caso número AB2024RF00031 en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC), entrada núm. 1.

[4] Véase, Apéndice de la peticionaria, expediente electrónico del caso número AB2024RF00031 en el SUMAC, entrada núm. 31.

[5] Véase, expediente electrónico del caso número AB2025RF00025 en el SUMAC, entrada núm. 1.

por el foro de instancia.[6] A la vista comparecieron ambas partes. El señor González Tirado compareció acompañado de su representante legal, mientras que la señora Rodríguez Ortiz compareció por derecho propio. En la referida vista, la EPA recomendó la consolidación de los casos por cuestiones de economía procesal, y porque los asuntos de custodia están íntimamente relacionados con los de alimentos.[7]

En síntesis, el señor González Tirado presentó como prueba: 1) su Planilla de Información Personal y Económica (PIPE); 2) documento intitulado *1040 SS 2024*; 3) contrato de arrendamiento entre él y la Sra. Carmen Tirado; y 4) sus gastos suplementarios.[8] Por su parte, la señora Rodríguez Ortiz habló de sus ingresos y presentó como prueba su PIPE.[9] Luego de haber escuchado a ambas partes, la EPA estableció una pensión alimentaria mensual de $724.29 a razón de $167.00 semanales, a ser pagados por la señora Rodríguez Ortiz. Asimismo, impuso una deuda retroactiva de pensión alimentaria de $313.86, a razón de $6.04 semanales por un término de doce (12) meses.

En la misma fecha en la que se celebró la vista de fijación de pensión alimentaria, la EPA emitió un *Informe sobre Pensión Alimentaria Permanente,* el cual fue aprobado en su totalidad por el TPI mediante *Sentencia* dictada el 11 de junio de 2025.[10] La licenciada Rivera Malavé plasmó en el referido informe lo acaecido en la vista, que ya hemos discutido, y realizó las siguientes determinaciones de hechos:

---

[6] Véase, expediente electrónico del caso número AB2025RF00025 en el SUMAC, entrada núm. 4.

[7] Grabación de la vista ante la EPA de 8 de mayo de 2025, 1:09-3:52; Véase, expediente electrónico del caso número AB2025RF00025 en el SUMAC, entrada núm. 22.

[8] Grabación de la vista ante la EPA de 8 de mayo de 2025, 4:59-25:38; Véase, expediente electrónico del caso número AB2025RF00025 en el SUMAC, entrada núm. 22.

[9] Grabación de la vista ante la EPA de 8 de mayo de 2025, 29:27-47:23; Véase, expediente electrónico del caso número AB2025RF00025 en el SUMAC, entrada núm. 22.

[10] Véase, expediente electrónico del caso número AB2025RF00025 en el SUMAC, entrada núm. 22.

1. El 22 de abril de 2025, el Sr. González presentó una Petición en la que solicitó la fijación de la pensión alimentaria para beneficio de la menor, Dayan Paulet González Rodríguez de 17 años. En esa misma fecha el Sr. González Tirado presentó su Planilla de Información Personal y Económica (PIPE) así como otros documentos complementarios.

2. Por su parte, la Sra. Rodríguez presentó su PIPE el 5 de mayo de 2025.

3. Surge del expediente judicial que entre las partes existe un caso de custodia, el alfanumérico AB2024RF00031. El 18 de abril de 2025, notificada el 25 de abril de 2025, el Tribunal dictó una Sentencia en dicho caso mediante la cual le otorgó al Sr. González la custodia monoparental de la menor.

4. Durante la Vista, la parte custodia declaró que trabaja por cuenta propia en la venta de paneles PVC desde hace 2 años. Expresó que no tiene un local físico, sino que vende su producto por internet y lo tiene almacenado en su residencia.

5. Se admitieron los siguientes documentos en evidencia:
    a. Exhibit 1 de la parte peticionaria: 1040 SS 2024 del Sr. John Paul González Tirado

    b. Exhibit 2 de la parte peticionaria: Contrato de arrendamiento entre el Sr. John Paul González Tirado y la Sra. Carmen Tirado

6. Los ingresos y deducciones de la parte custodio son los que surgen de la Hoja de Trabajo que se acompaña como parte de este Informe.

7. Se consideraron los siguientes gastos suplementarios:
    a. Vivienda - $600.00 mensuales (2 ocupantes)

    b. Uniformes: $300.00 anuales

    c. Materiales: $100.00 anuales

8. La Sra. Rodríguez declaró que trabaja como secretaria en JL Refrigeration and General Contractor desde hace 5 años. Declaró que cobra $350.00 netos de forma semanal y trabaja 30 horas a la semana.

9. Al sumar los gastos que informó la Sra. Rodríguez bajo juramento en su PIPE estos suman $3,169.00. Por tanto y conforme al Art. 8 del Reglamento Núm. 9535, se le imputó la sumatoria de los gastos como el ingreso a considerar.

10. Surge de las Guías Mandatorias, Reglamento Núm. 9535, una pensión alimentaria de $724.29 mensuales.
    a. Básica: $531.14

b. Suplementaria: $193.15.[11]

En adición, realizó las siguientes recomendaciones al TPI, algunas de las cuales ya hemos discutido de igual manera:

En consideración a las determinaciones de hecho y conclusiones de derecho formuladas en este caso, se recomienda al Tribunal lo siguiente:

Imponer una pensión alimentaria permanente de **$724.29 mensuales a razón de $167.00 semanales**, en beneficio de la menor, **Dayan Paulet González Rodríguez de 17 años.** La pensión alimentaria será pagada por **la Sra. Yolimar Rodríguez Ortiz** a través de la **Administración para el Sustento de Menores** (ASUME). La pensión alimentaria permanente es efectiva desde el **22 de abril de 2025.**

La menor se beneficia de un plan médico privado provisto por la Sra. Rodríguez.

**La deuda por concepto de retroactivo es de $313.86. Se recomienda un plan de pago de $6.04 semanales por un término de 12 meses**.

Recomendamos que los gastos médicos que no cubra el plan de salud, los gastos de educación (no contemplados en la pensión suplementaria) y los gastos extraordinarios, estos últimos siempre y cuando hayan sido consultados y aprobados por ambas partes antes de incurrir en ellos, sean cubiertos a través del sistema de reembolso. El Sr. González responde en un **42%** y la Sra. Rodríguez responde en un **58%.**

La parte custodia tendrá quince (15) días, contados a partir de la fecha de incurrir en el gasto, para enviar a la otra parte evidencia del pago. La parte que reciba la evidencia tendrá quince (15) días para enviar a la otra parte la proporción correspondiente de la cantidad que refleje el recibo de pago. Todo gasto de $50.00 o más debe ser discutido y aprobado por ambos padres antes de incurrir en el mismo.

**Se recomienda la imposición de honorarios de abogado.**

**Además, recomendamos la consolidación del caso epígrafe con el alfanumérico AB2024RF00031 el cual pertenece a la sala 503, para la continuación de los procedimientos en el alfanumérico AB2024RF00031.[12]**

Posteriormente, el 23 de mayo de 2025, la señora Rodríguez Ortiz presentó una *Moción Informativa y Solicitud.*[13] En resumen, peticionó

---

[11] *Id.*

[12] (Negrillas en el original). *Id.*

[13] Véase, expediente electrónico del caso número AB2025RF00025 en el SUMAC, entrada núm. 11.

al TPI comenzar la etapa del descubrimiento de prueba y realizar una nueva vista ante la EPA, en aras de establecer una pensión justa, conforme a las necesidades de la menor y las capacidades económicas de los progenitores. El 29 de mayo de 2025, el TPI emitió una *Orden* en la que declaró No Ha Lugar la referida moción. Luego de unos incidentes procesales adicionales, incluyendo la consolidación del caso número AB2025RF00025 con el caso AB2024RF00031, el 9 de junio de 2025, la señora Rodríguez Ortiz presentó una solicitud de *Reconsideración*.

En esencia, alegó, que no se había coordinado, ordenado o tramitado el comienzo del descubrimiento de prueba mandatorio, conforme al Artículo 16 de la Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, mejor conocida como la *Ley Orgánica de la Administración para el Sustento de Menores* (ASUME), 8 LPRA sec. 501 nota *et seq.* (Ley 5). Como consecuencia, solicitó al TPI el comienzo del descubrimiento de prueba, que refiriese el caso a la EPA y que señalase una vista para la fijación de una pensión provisional. Sin embargo, el 17 de junio de 2025, el TPI emitió otra *Orden* en la que declaró No Ha Lugar a la solicitud de reconsideración.

Inconforme, el 21 de julio de 2025, la señora Rodríguez Ortiz presentó el auto de *certiorari* de marras y señaló la comisión del siguiente error:

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR MEDIANTE ORDEN EMITIDA EL 17 DE JUNIO DE 2025 Y ARCHIVADA EN AUTOS EL 20 DE JUNIO LA SOLICITUD DE RECONSIDERACIÓN PRESENTADA POR LA PETICIONARIA EN SOLICITUD DE REALIZACIÓN DE DESCUBRIMIENTO DE PRUEBA PARA VISTA FINAL DE ALIMENTOS LA CUAL EN SU CON[S]ECUENCIA CONFIRM[Ó] LA ORDEN EMITIDA EL 29 DE MAYO DE 2025 DENEGANDO LA SOLICITUD DE LA DEMANDADA PARA REALIZAR UN DESCUBRIMIENTO DE PRUEBA Y CELEBRACIÓN DE VISTA FINAL DE ALIMENTOS VIOLENTANDO ASI EL DEBIDO PROCESO DE LEY.

El 19 de agosto de 2025 emitimos una *Resolución* para procurar la postura del señor González Tirado a presentarse dentro

de un término de treinta (30) días. Transcurrido en exceso el plazo decretado, damos por perfeccionado el recurso sin el beneficio de su comparecencia.

## II.

## A.

El auto de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones judiciales de un foro inferior y corregir algún error cometido por éste. *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al., v. BBVAPR*, 185 DPR 307, 337-338 (2012); *García v. Padró*, 165 DPR 324, 334 (2005). A diferencia de la apelación, el foro revisor tiene la facultad para expedir o denegar el recurso de *certiorari* de manera discrecional. *García v. Padró, supra.* El Tribunal Supremo de Puerto Rico ha definido *discreción* como el "poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *Id.*, citando a *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990). Por ende, la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera..." *Pueblo v. Sánchez González*, 90 DPR 197, 200 (1964), citado con aprobación en *García v. Padró, supra*, págs. 334-335.

No obstante, el ejercicio de la discreción no equivale a hacer abstracción del resto del Derecho, ya que ese proceder constituiría, en sí mismo, un abuso de discreción. *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001). Por lo tanto, el examen al auto discrecional que realizamos antes de decidir el curso a seguir no se da en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG, supra*, pág. 176. Ello así, porque "el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad". *García v. Padró, supra*, pág. 335; *Pueblo v. Ortega Santiago, supra*.

Es sabido que la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita taxativamente las instancias en las cuales este foro intermedio tiene autoridad para atender los recursos de *certiorari*. En su parte pertinente, la norma dispone que, por excepción, estamos autorizados a expedir un recurso de *certiorari* en los **casos de relaciones de familia**. *Id.* Añade la norma procesal que, "[a]l denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión". *Id.*

Además del examen objetivo antes descrito, para ejercer sabia y prudentemente nuestra facultad discrecional al determinar si expedimos o denegamos un recurso de *certiorari*, nos guiamos por la Regla 40, *Criterios para la expedición del auto de certiorari*, del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 62-63, 215 DPR __ (2025):

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) **Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho**.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) **Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia**. (Énfasis nuestro).

Claro está, es norma asentada que este tribunal intermedio no interviene con las determinaciones emitidas por el foro primario ni sustituye su criterio discrecional, "*salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso con el ejercicio de la discreción, o que incurrió en error manifiesto*". (Bastardillas en el original). *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018).

**B.**

En nuestra jurisdicción, se reconoce **el derecho del ciudadano a un debido proceso de ley** en toda actuación en la que el Estado intervenga con su vida, su libertad o su propiedad. Tal prerrogativa se consagra en el Artículo II, Sección 7, de la Constitución de Puerto Rico y en las Enmiendas V y XIV de la Constitución de los Estados Unidos. Const. de P.R., Art. II, Sec. 7, LPRA, Tomo 1; Const. EE. UU., LPRA, Tomo 1. El debido proceso de ley es el "derecho de toda persona a tener un proceso justo y con todas las debidas garantías que ofrece la ley, tanto en el ámbito judicial como en el administrativo". *Com. PNP v. CEE et al. III*, 196 DPR 706, 713 (2016). En su vertiente procesal, el debido proceso de ley le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que sea **justo y equitativo**. *Aut. Puertos v. HEO*, 186 DPR 417, 428 (2012). En virtud de ello, es norma firmemente asentada de que todo procedimiento adversativo debe satisfacer los siguientes requisitos: "(1) una notificación adecuada del proceso; (2) un proceso ante un juez imparcial; (3) la oportunidad de ser oído; (4) el derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) tener asistencia de abogado, y (6) que la decisión se fundamente en la evidencia presentada y admitida en el juicio". *Natal Albelo v. Romero*

*Lugo y otros*, 206 DPR 465, 509 (2021); *Román Ortiz v. OGPe*, 203 DPR 947, 954 (2020).

## C.

La obligación de proveer alimentos por parte de un progenitor a su hijo está revestida del más alto interés público. *Ríos Figueroa v. López Maisonet*, 216 DPR __ (2025); 2025 TSPR 86. Además, el bienestar de los menores constituye parte integral de la política pública del Gobierno de Puerto Rico. *De León Ramos v. Navarro Acevedo*, 195 DPR 157, 169 (2016). El derecho de los menores a recibir alimentos va de la mano con el propio derecho a la vida consagrado en la Carta de Derechos de nuestra Constitución. *Ríos Figueroa v. López Maisonet, supra; De León Ramos v. Navarro Acevedo, supra*; Art. II, Sec. 7, Const. PR, LPRA, Tomo 1. El deber de ambos progenitores de alimentar a los hijos es inherente a la filiación. Art. 558(b) del Cód. Civil, 31 LPRA sec. 7104(b). En armonía, el Artículo 653 del Código Civil, 31 LPRA sec. 7531, dispone lo siguiente sobre la obligación alimentaria:

> Se entiende por alimentos todo lo que es indispensable para el sustento, la vivienda, la vestimenta, la recreación y la asistencia médica de una persona, según la posición social de su familia.
>
> Cuando el alimentista es menor de edad, los alimentos comprenden también su educación, las atenciones de previsión acomodadas a los usos y a las circunstancias de su entorno familiar y social y los gastos extraordinarios para la atención de sus condiciones personales especiales.

En cuanto a la cuantía de los alimentos del menor de edad, el Artículo 666 del Código Civil, 31 LPRA sec. 7562, establece que "se fija siguiendo los criterios dispuestos en la ley especial complementaria". Claro está, la determinación de la pensión de alimentos debe velar por que la cuantía que se establezca cumpla con el **principio de proporcionalidad**. (Énfasis nuestro). *Llorens Becerra v. Mora Monteserín*, 178 DPR 1003, 1016 (2010). Partiendo de este principio es que se han adoptado, por vía estatutaria y

reglamentaria, parámetros más precisos para dirigir la ardua labor de determinar la capacidad económica con que cuentan los padres y las madres para suplir las necesidades de sus hijos. *Id.*, págs. 1016-1017.

Cónsono con lo anterior, la Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, mejor conocida como la *Ley Orgánica de la Administración para el Sustento de Menores* (ASUME), 8 LPRA sec. 501 nota *et seq.* (Ley 5), tiene como fin asegurar el cumplimiento de las obligaciones alimentarias de los padres y madres para con sus hijos menores de edad. *De León Ramos v. Navarro Acevedo, supra*, págs. 170-171. Por su parte, las *Guías mandatorias para fijar y modificar pensiones alimentarias en Puerto Rico*, Reglamento Núm. 9535 del 15 de febrero de 2024 (Reglamento 9535), establecen **de manera uniforme y equitativa**, **a través de un descubrimiento de prueba amplio y compulsorio sobre la situación económica de las partes**, **la aportación monetaria de cada uno mediante criterios numéricos y descriptivos, tomando en consideración los ingresos de los progenitores y las necesidades de los hijos**. (Énfasis nuestro). *Díaz Rodríguez v. García Neris*, 208 DPR 706, 719 (2022) citando a *De León Ramos v. Navarro Acevedo, supra,* pág. 170. Véase, Art. 16 de la Ley 5, 8 LPRA sec. 515. De acuerdo con este ordenamiento, al determinar la cuantía de la pensión se evalúa tanto la situación económica de los alimentantes, como las necesidades particulares de los alimentistas. *Martínez v. Rodríguez,* 160 DPR 145, 154 (2003).

### III.

Como cuestión de umbral, sabido es que este Foro revisor tiene discreción para expedir o denegar un recurso de *certiorari* interlocutorio. Para ello, ejercemos un examen objetivo a base de la Regla 52.1 de Procedimiento Civil, *supra*, y otro subjetivo, partiendo de los criterios consignados en la Regla 40 de nuestra

reglamentación, *supra.* Al tratarse de un caso sobre relaciones de familia, acordamos expedir el auto de *certiorari* del epígrafe, al justipreciar que la controversia presentada ante nuestra consideración amerita una resolución en sus méritos.

En la causa presente, la peticionaria alega que el TPI incidió y violó el debido proceso de ley, al denegar el comienzo de la etapa del descubrimiento de prueba y denegar además la celebración de una vista para establecer una pensión final. Argumenta que, no hay indicador alguno en el expediente ante nos que impida permitir el descubrimiento de prueba y la celebración de una vista. Asimismo, asevera que, dado al comportamiento demostrado por ella misma en la vista celebrada ante la EPA el 8 de mayo de 2025, procedía fijar una pensión provisional y calendarizar un descubrimiento de prueba, lo cual no ocurrió. Veamos.

Surge del expediente ante nuestra consideración que, durante la aludida vista, la señora Rodríguez Ortiz realizó una serie de interrupciones contrarias a Derecho que motivaron a la EPA a apercibirle sobre el detenimiento de los procedimientos y la imposición de una pensión provisional.[14] Ello, a los fines de que contratase representación legal, pues la conducta exhibida por la peticionaria demostró que no podía representarse por derecho propio. A lo anterior, la señora Rodríguez Ortiz expresó no tener inconveniente alguno.[15] No obstante, el informe realizado por la EPA recomendó imponer una pensión permanente, y cuya sugerencia acogió el TPI en la *Sentencia* emitida el 11 de junio de 2025.[16]

Conforme al estado de Derecho vigente, todo proceso adversativo requiere la salvaguarda de ciertas garantías mínimas como parte del debido proceso de ley. Entre ellas, el derecho a ser

---

[14] Grabación de la vista ante la EPA de 8 de mayo de 2025, 29:08.
[15] *Id.*
[16] Véase, expediente electrónico del caso número AB2025RF00025 en el SUMAC, entrada núm. 22

oído. La peticionaria solicitó que se señalara una vista para la imposición de una pensión alimentaria final, pero el foro recurrido rechazó tal solicitud.

Así, pues, evaluados los hechos particulares que informa este caso, junto a los documentos unidos al expediente, colegimos que el TPI cometió el error señalado. Somos del criterio que no procede expandir la etapa del descubrimiento de prueba en este caso, toda vez que la peticionaria ya tuvo la oportunidad de presentar prueba en la vista ante la EPA. Sin embargo, entendemos que el TPI debía proveerle a la señora Rodríguez Ortiz el beneficio de celebrar una vista para que esta impugnase el *Informe sobre Pensión Alimentaria Permanente* emitido por la EPA. Por todo lo anterior, concluimos que las determinaciones del foro recurrido fueron contrarias a Derecho. Su curso decisorio constituyó una violación a la norma establecida al debido proceso de ley.

## IV.

Por los fundamentos expuestos, expedimos la petición de *certiorari* y revocamos los dictámenes recurridos. En consecuencia, devolvemos el caso ante el TPI para la continuación de los procedimientos. Ordenamos la celebración de una vista ante el TPI a los fines de que se le permita a la peticionaria impugnar el *Informe sobre Pensión Alimentaria Permanente* emitido por la Examinadora de Pensiones Alimentarias.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones